Freddie L. Stallworth sued for a judgment declaring the termination of his employment to be invalid. He named as defendants the City of Evergreen; Henry Lomax Cassady, in his official capacity as mayor of Evergreen; Curtis Hamilton, in his official capacity as Evergreen's city administrator; and Jerry L. Caylor, James C. King, Phyllis N. Brock, Larry W. Fluker, and Elizabeth M. Stevens, in their official capacities as members of the Evergreen city council. He alleged certain unlawful employment practices in his termination from employment with the City. The trial court entered a judgment for the defendants. Stallworth appeals. We reverse and remand.
Stallworth was employed as personnel officer for the City and was responsible for maintaining employee records; developing, maintaining, and updating job classification and pay plans; and interpreting personnel policies for the City. His job as personnel officer was under the merit system, and he could be terminated only for cause. The mayor was the appointing authority for the City. Hamilton, as the city administrator, *Page 231 
supervised the department heads and was Stallworth's immediate supervisor.
At an executive session of the city council, Stallworth was asked to explain certain payroll discrepancies, but he failed to provide an explanation. Consequently, Hamilton recommended that disciplinary action be taken against Stallworth. The mayor concurred in that recommendation. Thereafter, by memorandum, Hamilton notified Stallworth that a hearing had been scheduled to consider his termination. In a subsequent memorandum, Hamilton notified Stallworth of the charges against him and of the witnesses to be called against him. At a pretermination hearing, Hamilton served as the hearing officer. Stallworth, who was represented by counsel, objected to Hamilton's serving as the hearing officer, because the City had been given notice that Stallworth would call Hamilton to testify at the hearing about his responsibilities as city administrator and because of a perceived lack of impartiality on Hamilton's part. When Hamilton was called as a witness, the mayor took over as the hearing officer, over Stallworth's objection based on the City's having called the mayor as a witness against Stallworth at this hearing. The City also called Councilman Caylor as a witness against Stallworth at this hearing.
Following the pretermination hearing, which lasted eight hours, the hearing officer determined that Stallworth had failed to provide an adequate explanation as to the payroll discrepancies. Following the hearing, the mayor and Hamilton, by memorandum, advised Stallworth that he was being terminated from employment and advised him of his right to appeal to the Evergreen Personnel Review Board ("the Review Board"). The Review Board was created to serve in a quasi-judicial capacity as the appeal body to consider grievances by the City's regular classified employees and part-time employees. (Section II A, p. 4, Personnel Handbook.) The Review Board is comprised of five members (not City employees or holders of office in the City), who are appointed by council members. (See Section II B, p. 4, Personnel Handbook.) The employee is "allowed to appear before the [Review Board] with reasonable representation of [his] choice, if [he] desires." (Section IX B, Step 3(c), p. 30, Personnel Handbook.) The Review Board "will hear the employee's grievance, gather pertinent documents, interview witnesses as necessary, and prepare a written statement of fact." (Section IX B, Step 3(d), p. 31, Personnel Handbook.) Pursuant to an amendment to the Personnel Handbook, "[w]ithin ten (10) working days of the hearing, the Personnel Review Board will make a determination in the case," and "[t]he mayor and council will review cases heard before the Personnel Review Board and make the final determination." (Amendment to Section IX B, Step 3(e), p. 31, Personnel Handbook.)
A full evidentiary hearing was held before the Review Board. During the hearing, the City called the mayor as a witness, and it also called Hamilton and Caylor as witnesses. However, neither the mayor nor Hamilton or Caylor participated in the Review Board's deliberations. The Review Board voted 3-2 to affirm Stallworth's termination.
Thereafter, the city council convened to make the final determination as to Stallworth's termination, as authorized by the Personnel Handbook. Caylor abstained from voting on the issue of Stallworth's termination because, he said, he had participated in the pretermination and Review Board hearings. However, the mayor, in spite of his participation at the pretermination and Review Board hearings, voted to uphold Stallworth's termination. Some council members expressed concern over what they considered an inability to make an informed decision without reliable information — they had been excluded from the Review Board hearing and they had no tape-recording, transcript, or other evidentiary materials pertaining to Stallworth's termination proceedings other than the written findings of the Review Board. In response to these concerns, the city attorney explained that council members had been excluded from the Review Board hearing because, he said, "if you had heard the Review Board proceedings, then you would be in no position to be sitting in the council's position, which is the third step." Thereafter, the city council, *Page 232 
with Caylor abstaining, voted 3-2 to terminate Stallworth.
The trial court affirmed the city council's approval of Stallworth's termination, holding, in part, as follows:
 "3. . . . [T]he Evergreen ordinance creating the personnel system provides adequate procedural due process rights as enunciated in McKinney v. Pate, 20 F.3d 1550 (11th Cir. 1994), because the personnel review board is composed of citizens of Evergreen appointed by the City Council members, by district, and provides for a 'de novo hearing.'
 "4. The Evergreen ordinance envisions [that] the termination proceedings and the providing of due process rights would be overseen by the city personnel officer. The statutory scheme was skewed in the instant case because the very person in charge of protecting the employee's rights was the subject of the termination action. The only two city officials superior to the personnel officer were the city administrator [Hamilton] and the mayor [Cassady]. The court finds and determines that the pre-termination hearing was flawed from a due process standpoint because both reviewing officers testified against [Stallworth] and were not impartial. The personnel review board was not so affected and [Stallworth] received a de novo hearing from them. However, the court notes that the written findings of the individual personnel review board members are ambiguous in certain aspects. Nevertheless, the vote remains 3-2 to approve the termination.
 "5. For purposesaof this case, the major issue is what is the meaning of 'review' by the City Council of the personnel review board's action. The ordinance fails to specify any criteria for the manner of review or the applicable standard for review. At the very minimum, the terminated employee is entitled to have the termination decision reviewed by a fair and impartial group acting on reliable information.
 "6. In the instant case, . . . Cassady and Caylor had testified against [Stallworth] at the personnel review board hearing. In addition, Mayor Cassady had been the moving force behind the termination of the personnel officer and the person responsible for gathering most of the evidence. The court concludes that in the factual setting of this case, the mayor [Cassady] and Councilperson Caylor were disqualified from voting to either affirm or reverse the decision of the personnel review board. While [Caylor] abstained from voting, Mayor Cassady did vote.
 "7. While the Council received no evidence nor reviewed the record made at the personnel review board hearing, the Council members had been supplied with memoranda and correspondence between [Stallworth], the Mayor [Cassady], and the City Administrator [Hamilton]. Such materials provided a basis for the council members to render an informed decision with respect to the affirmance or reversal of the personnel review board.
 "8. After the court's nullifying the Mayor's vote, the City Council vote remains at 2-2. The court determines that logically the same rule should apply to the review of a personnel decision by a city council as applies to an appellate court's tie vote with respect to the decision of the trial court. It is well settled in Alabama that in the event of a tie vote on the appeal of a lower court's judgment, the judgment of the lower court is due to be affirmed.
 "9. Therefore, the court concludes that since the City Council vote is 2-2, the decision of the personnel review board was due to be affirmed and that [Stallworth] is entitled to no relief."
Stallworth appeals, maintaining that his due process rights guaranteed by the United States Constitution and the Alabama Constitution were violated by Hamilton's participation as investigator, judge, and adverse witness in the pretermination hearing and as a witness at the Review Board hearing and by the mayor's participation as investigator, adverse witness, prosecutor, judge, and final decision-maker. Stallworth says the proceedings were tainted by bias and prejudgment and, therefore, that the mere cancellation of the mayor's vote at the city council hearing was insufficient to cure the due process violations. *Page 233 
The City concedes that had the pretermination hearing been the only procedural protection given Stallworth, then Stallworth would not have had "meaningful due process." The City, nonetheless, maintains that because it afforded Stallworth the right to appeal to an independent, unbiased Review Board, which it says constituted a mechanism to redress the alleged due process deprivation, the fundamental requirement of due process was satisfied.
The Fourteenth Amendment to the United States Constitution forbids a State or any subdivision thereof from taking a person's property without providing that person with due process of law. Building on earlier cases that had greatly expanded the meaning of the term "property" forFourteenth Amendment purposes, the United States Supreme Court held inBoard of Regents v. Roth, 408 U.S. 564, 576-78, 92 S.Ct. 2701,2708-10, 33 L.Ed.2d 548 (1972), that a governmental employee's contractual or statutory right to continued employment was a property interest falling within the scope of theFourteenth Amendment's protection. Therefore, "a state employee who under state law, or rules promulgated by state officials, has a legitimate claim of entitlement to continued employment absent sufficient cause for dismissal may demand the procedural protections of due process." Goss v. Lopez, 419 U.S. 565, 573,95 S.Ct. 729, 735, 42 L.Ed.2d 725 (1975). All parties to this action concede that Stallworth had a protectible interest in continued employment with the City. The parties' sole disagreement concerns the constitutional adequacy of the review procedures provided to Stallworth by the City.
"[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." Cafeteria Rest. Wkrs. U.,Local 473, AFL-CIO v. McElroy, 367 U.S. 886, 895,81 S.Ct. 1743, 1748-49, 6 L.Ed.2d 1230 (1961). In the context of the routine dismissal of a governmental employee who has a legitimate right to continued employment absent sufficient cause for termination, the United States Supreme Court has held that "all the process that is due [to such an employee] is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures." Cleveland Bd.of Educ. v. Loudermill, 470 U.S. 532, 547-48, 105 S.Ct. 1487,1496, 84 L.Ed.2d 494 (1985).
Justice White, writing for the majority in Cleveland Bd. ofEduc., defined the constitutional boundaries of the required pretermination hearing stating:
 "[T]he pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions — essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action. See Bell v. Burson, 402 U.S., [535] at 540, 91 S.Ct. [1586] at 1590 [(1971)].
 "The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. See Friendly, 'Some Kind of Hearing,' 123 U.Pa.L.Rev. 1267, 1281 (1975). The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."
470 U.S. at 545-46, 105 S.Ct. at 1495. (Citations omitted.)
Stallworth argues that the involvement of biased decision-makers throughout the termination review process afforded him by the City denied him due process of law. Uncontradicted testimony at trial established that the hearing officer at Stallworth's pretermination hearing was not only Stallworth's supervisor (Hamilton, the person who had initiated the procedures to have Stallworth terminated), but was also a material witness at the pretermination hearing, actually stepping down from being hearing officer long enough to testify.
An unbiased and impartial decision-maker is one of the most, if not the most, *Page 234 
fundamental of requirements of fairness and due process.Evans v. City of Huntsville, 580 So.2d 1323 (Ala. 1991). See also Friendly, "Some Kind of Hearing," 123 U.Pa.L.Rev. 1267, 1279 (1975); and Goldberg v. Kelly, 397 U.S. 254, 271,90 S.Ct. 1011, 1022, 25 L.Ed.2d 287 (1970). Although the hearing officer at a pretermination hearing need only determine whether there are "reasonable grounds to believe that the charges against the employee are true and support the proposed action," the most basic precepts of due process of law require that the person making that decision, the hearing officer, must be relatively unbiased and impartial. Cleveland Bd. of Educ.,470 U.S. at 546, 105 S.Ct. at 1495. The United States Supreme Court inGoldberg v. Kelly, 397 U.S. at 271, 90 S.Ct. at 1022, recognized that the very nature of governmental entities will make it nearly impossible in many situations to find anyone within the governmental entity to serve as hearing officer who has been completely shielded from any contact with the subject matter of the proceeding, but the Court further stated that although "prior involvement in some aspects of a case will not necessarily bar" an official from serving as an hearing officer, "participat[ion] in making the determination under review" would bar such an official from serving as hearing officer. It also clearly offends the most basic traditional notions of due process to have a person serve as a hearing officer in a case in which he or she testifies as a material witness.
The trial court recognized that the pretermination hearing afforded Stallworth was constitutionally deficient, but, relying on the case of McKinney v. Pate, 20 F.3d 1550 (11th Cir. 1994), cert. denied, McKinney v. Osceola County Bd. ofCounty Comm'rs, ___ U.S. ___, 115 S.Ct. 898, 130 L.Ed.2d 783
(1995), ruled that Stallworth had not been deprived of his right to procedural due process, because, it held, any procedural deficiency in the pretermination hearing was remedied by an adequate post-deprivation hearing. The trial court's reliance on McKinney is misplaced because the present case is clearly distinguishable and also because some of the reasoning underlying the holding in that case seems questionable in light of United States Supreme Court caselaw. Alabama Courts must apply Federal constitutional law as enunciated by the United States Supreme Court; caselaw from the various Federal circuit courts of appeals, although of invaluable aid in understanding Federal law as enunciated by the United States Supreme Court, is only persuasive authority in our state courts.
The plaintiff in McKinney filed an action under 42 U.S.C. § 1983
after his dismissal from employment. He "failed to take advantage of any state remedies, opting instead to pursue his claim in federal court." McKinney, 20 F.3d at 1563. Unlike the plaintiff in McKinney, Stallworth chose to pursue a remedy in the state courts. The Court of Appeals for the Eleventh Circuit based its holding that McKinney was not entitled to § 1983 relief not only on a conclusion that any due process problems with McKinney's pretermination hearing had been remedied by an adequate post-deprivation hearing, but also on this conclusion:
 "Florida courts indeed do have the power to review employment termination cases. Inherent in that power to review is the power to remedy deficiencies and to cure violations of due process. Therefore, the Florida courts have the authority to order the relief to which McKinney claims to be entitled — a new hearing conducted by a fair tribunal.
 ". . . [T]he scope of the Florida courts' review encompasses the claim McKinney brought in federal court. . . . The Florida circuit courts, on certiorari review, possess broad powers of review. . . . [See] City of Deerfield Beach v. Vaillant, 419 So.2d 624, 626 (Fla. 1982)."
McKinney, 20 F.3d at 1563. (Citations omitted.)
Furthermore, the Eleventh Circuit's reliance on Parratt v.Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), to buttress its conclusion in McKinney that a denial of due process at the pretermination level can be fully remedied by a procedurally adequate post-termination hearing is questionable.Parratt involved a procedural due process claim brought by a prisoner who alleged that a prison employee had either negligently lost or intentionally stolen his personal property. The prisoner in Parratt asserted that a post-deprivation hearing in which he could seek *Page 235 
tort damages was constitutionally insufficient, arguing that he should have been provided with a predeprivation hearing, also. Naturally, the United States Supreme Court recognized that a predeprivation hearing in that sort of situation would be impossible, because a State cannot predict when a prison employee will negligently misplace or decide to steal a prisoner's property. The situation where an employee is terminated is much different.
In Cleveland Board of Education, 470 U.S. 532 at 547-48,105 S.Ct. 1487 at 1496-97, the United States Supreme Court recognized that predeprivation hearings were practicable in the context of employment terminations; that context is very different from the situation in Parratt. The Supreme Court held in Cleveland Board of Education that tenured governmental employees almost always must be afforded at least a limited pretermination hearing before they can constitutionally be terminated. To hold that a procedurally adequate post-termination hearing remedies the deprivation inflicted on a discharged employee by an earlier decision based on a pretermination hearing completely devoid of due process of law would be to render the United States Supreme Court's holding inCleveland Board of Education a nullity. Furthermore, no matter how fair and adequate the procedures at the post-termination hearing may be, the initial decision made after the pretermination hearing inevitably will have diminished significantly the employee's chances of prevailing at the post-termination hearing.
Based on the foregoing, we hold that Stallworth, who as a classified employee with the City had a property right in his employment, was denied the process he was due. It is undisputed that Stallworth's pretermination hearing was flawed. The holding of the post-termination hearing before the Review Board did not remedy and could not have remedied the earlier deprivation of Stallworth's right to a constitutionally adequate pretermination hearing; this is the case whether or not the trial court's holding that Stallworth was afforded a constitutionally adequate post-deprivation hearing was correct.[1]
REVERSED AND REMANDED.
HOOPER, C.J., and ALMON, COOK, and BUTTS, JJ., concur.
[1] The hearing before the Review Board would have comported with the independent due process requirement of an adequate post-termination hearing if the Review Board had been the final arbiter of Stallworth's termination. However, the city council, pursuant to the Personnel Handbook, was assigned the role of making that final determination. Therefore, review before the city council would have had to be in the form of an evidentiary hearing and would have had to be conducted without the presence of members who taint the proceeding, in order to comport with due process. To do otherwise would create a situation that would lead a council member not to hold the balance nice, clear, and true. See, e.g., Aetna Life Ins. Co. v. Lavoie,475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986).
 "[W]hile the influence of any single participant . . . can never be measured with precision, experience teaches us that each member's involvement plays a part in shaping the . . . ultimate disposition. The participation of [one] who has [an] interest in the outcome of the case of which he knows at the time he participates necessarily imports a bias into the deliberative process. This [constitutes a deprivation] of the assurance of impartiality that is the fundamental requirement of due process."
475 U.S. at 831, 106 S.Ct. at 1590 (Justice Brennan, concurring). (Emphasis in original.)