777 So.2d 126 (2000)
STATE TENURE COMMISSION
v.
Cherry PAGE.
2990387.
Court of Civil Appeals of Alabama.
August 18, 2000.
*127 Sydney S. Smith of Smith & Smith, P.C., Phenix City, for appellant.
Alvin T. Prestwood of Volz, Prestwood & Hanan, P.C., Montgomery, for appellee.
YATES, Judge.
On December 23, 1997, the Phenix City Board of Education ("the Board") voted to cancel the employment contract of Cherry Page as director of career/technical education. On January 5, 1998, Page appealed the cancellation of her contract to the Alabama State Tenure Commission ("the Commission"). On March 4, 1998, the Commission affirmed the Board's cancellation of Page's contract. On May 1, 1998, Page petitioned the Circuit Court of Montgomery County for review of the Commission's decision, pursuant to the Alabama Administrative Procedure Act, § 41-22-1 et seq., Ala.Code 1975. On July 30, 1998, the Circuit Court of Montgomery County entered an order transferring the matter to the Circuit Court of Russell County for a review, pursuant to § 16-24-38, Ala. Code 1975.[1] On November 18, 1999, the Russell County Circuit Court entered an order finding that the Board had violated Page's due-process rights and reversing the Commission's decision. The Commission appeals, following the denial of its postjudgment motion.
Page was a long-time employee of the Board and had served in several capacities during her employment, including instructor and principal. She was appointed supervisor of curriculum and instruction at Central High School in January 1995. In July 1996, Page was appointed curriculum supervisor and career/technical director. Her employment contract was renewed in July 1997, and the curriculum-supervisor duties were removed from her job description at that time. She was employed to serve solely as the career/technical director. Page had obtained tenure as an instructor, but had yet to obtain tenure as a supervisor. She was due to obtain tenure as a supervisor on January 17, 1998, pursuant to § 16-24-2(b), Ala.Code 1975.
Jack B. Russell, the superintendent of the Board, made the following recommendation *128 to the Board at its meeting on November 25, 1997:
"It is the considered opinion of the administration of the Phenix City Public Schools that the position of Director of Career/Technical Education be abolished. The principal of Central High School is and should be the administrator of the high school which encompasses both the standard curriculum component and the vocational curriculum component. The position of a director of the vocational curriculum component is not needed for the efficient operation of the facility.
"Mrs. Page has attained continuing service status as a teacher with the Phenix City Board of Education. However, she has not attained continuing service status as a supervisor. Mrs. Page was employed in a supervisory position on January 17, 1995."
The initial draft of the Board's minutes of its November 25 meeting stated:
"On motion of Mr. Reese, seconded by Mrs. Graham, the board approved the employment contract cancellation of Mrs. Cherry Page, due to the abolishment of the position of Director of Career/Technical Education, effective December 31, 1997. A vote was taken with five members voting yea and Mrs. Bellamy and Mrs. Mitchell voting nay. For the record, Mrs. Bellamy opposed the motion because of legal questions and/or concerns that have not been answered."
(Emphasis added.) This version of the Board's minutes was not signed and the Board eventually substituted for it a version that was signed and that stated: "On motion of Mr. Reese, seconded by Mrs. Graham, the board approved the superintendent's written recommendation to propose the cancellation of Mrs. Cherry Page's employment contract effective December 31, 1997." A local newspaper carried the following account of the Board's November 25 meeting, under the heading "PC board abolishes career education post":
"The Phenix City School Board voted Tuesday to eliminate the job of director of career and technical education, which is held by Cherry Page at Central High School.
"The school board accepted Superintendent Jack Russell's proposal to end Page's position and contract during a special meeting.
"If Page chooses, she can contest the contract cancellation at a Dec. 19 meeting.
"`We feel like the position is no longer needed so we're going to abolish it.' Russell said. `Now we have to go through all of the due process requirements because she's a tenured teacher, but she's not a tenured supervisor.'
". . . .
"[Board member] Bellamy said she was uncomfortable voting to cancel the contract and felt there were legal questions that needed to be addressed."
Another newspaper had the following account: "The City School Board voted at a special meeting on November 25 to abolish the job, then voted 5-2 to cancel [Page's] contract."
On November 26, 1997, Russell wrote Page a letter informing her that "the Phenix City Board of Education proposed to cancel [her] employment contract on the grounds of abolishment of [her] position effective December 31, 1997, at its meeting on November 25, 1997." The letter cited Russell's recommendation as it appeared in the Board's minutes of November 25 as the specific reason for the abolishment of Page's position. The letter informed Page of her right to appear at a hearing before the Board on December 19, 1997, to contest the cancellation of her contract.
On December 10, 1997, Page, through her counsel, responded to Russell's letter and notified Russell that she intended to attend the hearing and to contest the cancellation of her contract. On December 15, 1997, counsel for the Board responded with a letter, stating, in part:

*129 "It is the intention of the Phenix City Board of Education to abolish the position of Director of Career/Technical Education at Central High School. This is an administrative decision based upon what is felt to be in the best interest of Central High School. The Principal of Central High School will assume the duties of the Director and will have ultimate authority over the entire campus. As you know, Mrs. Page has not attained continuing service status as a supervisor, and it is the intention of the Board to abolish this position and to cancel her contract as the Director prior to her having attained continuing service status."

(Emphasis added.)
At the December 19 hearing, Page's attorney moved the Board members to recuse themselves, contending that the Board had pre-decided the matter. Page's attorney also moved for a dismissal of the complaint, contending that the Board had failed to provide Page with adequate notice of the reasons her contract was being canceled. The Board denied both motions.
The evidence indicates that Page's employment contract as director of career/technical education had been renewed in July 1997, approximately four months before Russell's proposed cancellation. Page's duties as director of career/technical education included the day-to-day supervision of the career/technical program, management of a $1.3-million budget, and the supervision of 25 instructors. Page testified that when she was initially appointed director of career/technical education she was told that the position was needed in order to relieve the principal of some budget-management details.
The vocational school and the academic high school had previously been located on different sites. A comprehensive high school was built and then both the vocational and academic divisions were housed on one site. Russell testified that he had concluded that the school would be best served and more unified if the principal supervised the entire curriculum and, therefore, that the position of director of career/technical education was no longer needed. He stated that the decision to abolish the position was his and that he had not discussed the matter with anyone else. Although Russell stated that he had discussed with the principal of Central High School the assumption of Page's duties, the record indicates that no real plan had been devised as to how the principal would assume the management duties of the career/technical program during the middle of a school year.
Russell testified that another reason he had sought the cancellation of Page's contract was to prevent her from obtaining tenure on January 17, 1998. Russell stated:
"[I]f I had not recommended to this board that this employee, that her existing contract be canceled, she would have achieved tenure under the Alabama tenure law, ... on January 17th. And I simply didn't feel like it was in the best interest of this school district to add another salary, or to keep a salary of $57,000, which, in effect, I felt like we didn't need. And I made that judgment."
Russell further testified that had Page not been scheduled to attain tenured status in January 1998, he would have simply not renewed her contract at the end of the school year. Following the December 19 hearing, the Board voted 4 to 2 to cancel Page's contract. The Board held a subsequent meeting on December 23, 1997, and voted unanimously at that time to cancel Page's contract.
Because Page had attained continuing-service status as a teacher, the Commission conceded that she is entitled to all the procedural protection provided by the Teacher Tenure Act, even though she had not yet attained continuing-service status as a supervisor. We initially note that a tenured teacher's contract may be canceled for incompetency, insubordination, *130 neglect of duty, immorality, justifiable decrease in the number of teaching positions, or other good and just cause; however, cancellation may not be made for political or personal reasons. § 16-24-8, Ala.Code 1975. In order to cancel an employment contract of a teacher who has attained continuing-service status, the employing board of education must give notice to the teacher in writing, stating in detail the reasons for the proposed cancellation. § 16-24-9, Ala.Code 1975. See also Gardner v. Alabama State Tenure Comm'n, 553 So.2d 606 (Ala.Civ.App.1989). This court has stated:
"In reviewing actions of the Tenure Commission, the circuit court sits as an appellate court, and it is empowered to reverse the Tenure Commission only for failure to comply with the statutory procedures or when the Tenure Commission's action is unjust in that it contradicts the preponderance and overwhelming weight of the evidence. Our scope of review is the same as that of the circuit court: whether there is sufficient evidence to support the action of the Tenure Commission."
Alabama State Tenure Comm'n v. Conecuh County Bd. of Educ., 495 So.2d 1105, 1106 (Ala.Civ.App.1985) (citations omitted).
The trial court made the following findings in its order:
"[T]he teacher tenure law [does not provide] for any evidentiary hearing beyond the one held before the Phenix City Board of Education. The record before that body leaves serious questions as to whether it had pre-decided the case of Ms. Page before her hearing was ever convened.... Due process principles guarantee not only that a decision-maker be unbiased, but also that there be an appearance of impartiality in the proceedings.
"A second due process issue is raised in the notice provided to Ms. Page as to the reasons for the action against her. While Mr. Russell alleged that her directorship position was `not needed', he testified that another reason for the contract cancellation was to prevent Ms. Page's attainment of tenure as a supervisor. Other evidence offered, and not refuted by Mr. Russell, was that his actions were motivated by a desire to retaliate against Ms. Page for taking a neutral stand on Mr. Russell's candidacy for the position of superintendent. While this evidence could implicate other serious constitutional questions, it is clear that it strikes at the heart of due process of law. An affected person is entitled to have the particulars of the reasons for the action to be taken against him, and to be provided with those particulars before a hearing is convened.
"The due process issues of notice are accentuated by the fact that Mr. Russell canceled no one else's contract because of job abolishment, and that he made the ex parte decision to cancel Ms. Page's contract without having any concrete plans as to how her extensive program, including the supervision of 25 teachers and a 1.3 million dollar annual budget, would be managed in her absence. These factors cast much doubt upon the question of whether the need for Ms. Page's position was in fact the real reason for the action taken against her. Principles of due process of law are thereby offended.
"The court is also concerned that, when the Board of Education entered into an annual contract with Ms. Page as Director of Career/Technical Education at Central High School, in 1997 for the 1997-1998 school year, it obviously did so out of a sense of need for her services. The record is silent as to any bonafide change in circumstances that would have justified the contract repudiation only a few months later."
The State of Alabama or any subdivision thereof is forbidden by the Fourteenth Amendment to the United States Constitution from taking a person's property without providing that person *131 due process of law. Stallworth v. City of Evergreen, 680 So.2d 229 (Ala.1996). "`[A] state employee who under state law, or rules promulgated by state officials, has a legitimate claim of entitlement to continued employment absent sufficient cause for dismissal may demand the procedural protections of due process.'" Id., at 233, quoting Goss v. Lopez, 419 U.S. 565, 573, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). "An unbiased and impartial decision-maker is one of the most, if not the most, fundamental of requirements of fairness and due process." Id., at 233-34. The right to a fair hearing before an impartial tribunal or board is an important fundamental right. Alabama State Tenure Comm'n, supra. There are four requirements necessary to afford minimal due process to a teacher:
"(a) He [must] be advised of the cause or causes for his termination in sufficient detail to fairly enable him to show any error that may exist;
"(b) He [must] be advised of the names and the nature of the testimony of witnesses against him;
"(c) At a reasonable time after such advice, he must be accorded a meaningful opportunity to be heard in his own defense; and
"(d) That hearing should be before a tribunal that both possesses some academic expertise and has an apparent impartiality toward the charges."
James v. Board of School Comm'rs of Mobile County, Ala., 484 F.Supp. 705, 715 (S.D.Ala.1979), quoting Stewart v. Bailey, 556 F.2d 281, 285 (5th Cir.1977).
After carefully reviewing the record, we conclude that the trial court did not err in determining that Page's right to due process had been violated. The notice provided to Page indicated that her position of director of career/technical education was being abolished and her contract canceled because the position was not needed for the efficient operation of the school. However, Russell testified at the Board hearing on December 19 that Page's contract was also being canceled at that time to prevent her from attaining continuing-service status as a supervisor on January 17, 1998, and that had she not been scheduled to attain continuing-service status in January 1998 he would have simply not renewed her contract at the end of the school year. Page was not notified of this ground for cancellation of her contract; we conclude that due process required that she be given such notice.
Additionally, we conclude that sufficient evidence existed to support the trial court's finding that the Board had pre-decided Page's contract cancellation before its hearing of December 19 and thereby denied Page her due-process rights. In Alabama State Tenure Commission, supra, this court determined that a teacher-principal's due-process rights had been violated where there existed evidence indicating an "intolerably high risk of bias" on the part of the school board in that it had already prejudged the case against the teacher-principal. We conclude that the Board's initial draft of the minutes of its November 25, 1997, meeting, the content of the letter from the Board's counsel to Page's counsel on December 15, 1997, and the comments of the superintendent and the Board member as reported in the local newspapers create an "intolerably high risk of bias" on the part of the Board and indicate that it may have pre-decided Page's case and thereby denied her due process of law. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
ROBERTSON, P.J., and MONROE, J., concur.
THOMPSON, J., concurs in the result.
CRAWLEY, J., dissents.
CRAWLEY, Judge, dissenting.
The supreme court has stated our standard of review as follows:
"The legislature created the Commission as an administrative agency with *132 several functions, one being to review the action of boards of education canceling the contracts of tenured teachers. See Ala.Code 1975, § 16-24-10. See also, Ex parte Alabama State Tenure Comm'n, 555 So.2d 1071 (Ala.1989). The Commission has the power to retry the case on the record and to reach its own conclusions of fact. Sumter County Bd. of Educ. v. Alabama State Tenure Comm'n, 352 So.2d 1133, 1135 (Ala.Civ. App.), affirmed as modified, 352 So.2d 1137 (Ala.1977). Pursuant to § 16-24-10, the action of the Commission is final and conclusive unless it fails to comply with the provisions of the chapter or is unjust. The scope of judicial review of a decision of the Commission is extremely limitedonce the Commission makes a finding from the record, courts reviewing the Commission's decision must presume that the Commission's decision is correct, and that decision should not be reversed unless the overwhelming weight of the evidence indicates otherwise. Ex parte Alabama State Tenure Comm'n, supra."
Ex parte Alabama State Tenure Comm'n, 657 So.2d 1122, 1123-24 (Ala.1994).
I conclude that the circuit court has substituted its judgment for that of the Commission, by reversing the Commission's order upholding the Board's action eliminating Page's position. The Commission heard the evidence regarding the Board's alleged prejudgment of Page's case, and the Board's allegedly impermissible reason for eliminating Page's position in order to destroy her chances of becoming a tenured supervisor.
Page's argument that the Board pre-judged her case is somewhat disingenuous. The Board had to decide to eliminate the position held by Page before she was allowed to contest that decision. Therefore, the Board had in that sense prejudged Page's contention that her position should not be eliminated. But, I conclude that is not the improper prejudgment prohibited by the Teacher Tenure Act. This case does not involve misconduct by Page, but involves the Board's decision to decrease the number of supervisory employees. See Ala.Code 1975, § 16-24-8.
The Commission apparently found insufficient evidence for it to hold that the Board had acted improperly on either of these grounds. I would reverse the circuit court's judgment reversing the Commission's order.
NOTES
[1] Page contended that the Montgomery Circuit Court had jurisdiction to review the decision of the Commission, pursuant to the Alabama Administrative Procedure Act. The Commission moved to dismiss the petition, contending that review under the Alabama Administrative Procedure Act was improper because the matter did not present a "contested case," as is required for review under the Act. The Montgomery Circuit Court agreed and transferred the matter to the Russell Circuit Court. The Russell Circuit Court determined that review of the matter was proper under either the Teacher Tenure Act or the Alabama Administrative Procedure Act; however, it elected to dispose of the matter under the provisions of the Teacher Tenure Act. We make no determination as to whether the matter is properly reviewable under the Alabama Administrative Procedure Act.