THOMAS, Judge.
Frank Buck and Martha Buck appeal from a summary judgment entered against them by the Jefferson Circuit Court regarding a zoning decision made by the Birmingham City Council ("the city council"), which was the subject of an appeal filed by the Bucks in the circuit court. We affirm the summary judgment.
The Bucks are the owners of real property located on 14th Avenue South in Birmingham, which, according to the Bucks, was "improved by and with an office building, which ... is residential in character and was originally built as a single family residential dwelling house in 1912." The office building houses Frank's law firm. CH Highland, LLC ("Highland"), is a limited-liability company owned by Cortland *78 Partners, Inc., and Harbert Realty Services, LLC, that was created for the purpose of developing a luxury apartment complex with retail and restaurant space ("the subject property") in the Five Points South district of downtown Birmingham. Highland is the developer of the subject property, which is located on 14th Avenue South. In 2014 the Birmingham Comprehensive Plan ("the comprehensive plan") was adopted by the city council and approved by Mayor William A. Bell.
Highland intended to build a multi-story apartment complex, which conformed with the comprehensive plan but did not conform with the then current zoning restrictions applicable to the zoning district in which the subject property is located. Therefore, Highland had applied to the Birmingham Zoning Board of Adjustment for several variances, which had been approved and which were the subject of an appeal filed by the Bucks in the circuit court in case no. CV-13-00850. A hearing in that case was held on August 14, 2014; however, that case was ultimately dismissed as moot based upon the events that gave rise to this appeal.
On September 8, 2014, Highland submitted a rezoning application to the Birmingham Planning and Zoning Committee ("the advisory committee"). Highland requested that the area around the subject property be rezoned from a B-2 general-business district to a B-3 community-business district for the purpose of
"building a high density, mixed use project ... in conformity with the revised zoning and the City's Comprehensive Plan for this area (the 'Project'). The Project will consist of 318 apartment units, with 244 units in a fifteen story high rise apartment building facing Highland Avenue, 74 units on the back of the property facing 14th [Avenue South], an interior parking deck and approximately 4,700 square feet of retail space."
The advisory committee recommended to the city council that it approve Highland's request. Highland additionally sought approval from the City of Birmingham Planing and Zoning Commission. Notice was given that public hearings were being held, the city council held hearings, and, on December 30, 2014, the city council voted to adopt Ordinance No. 1949-G ("the rezoning decision"), which rezoned the area of the subject property to not a B-3 but, instead, a QB-3 community-business district. The "Q" refers to two specific "qualified" conditions ("the Q conditions"). The Q conditions required Highland to submit a site-development plan to the City of Birmingham Department of Planning, Engineering, and Permits that addressed various parking-, lighting-, landscaping-, and architectural-compatibility issues and to enter into a memorandum of understanding ("MOU") with the Temple Beth-El. Mayor Bell approved the rezoning decision on January 8, 2015.
On April 9, 2015, the Bucks filed a complaint against the City of Birmingham ("the City"); Mayor Bell and the city-council members, in their official capacities; and Highland ("the defendants"),[1] in which the Bucks alleged that the actions of the city council were arbitrary and capricious, that the City and the city council should be restrained from taking any action in reliance on the rezoning decision, *79 that the Bucks' right to due process and equal protection had been violated, and that certain actions had violated applicable laws and ordinances.
On May 1, 2015, the defendants filed a motion to dismiss the Bucks' complaint and a motion for a stay of discovery pending the entry of an order on their motion to dismiss. The circuit court entered an order granting the stay on May 21, 2015. However, on June 15, 2015, the circuit court entered an order denying the defendants' motion to dismiss and lifting the stay. Thereafter, Mayor Bell and the city-council members filed a motion to dismiss the claims asserted against them, which the circuit court granted on June 24, 2015.
In July 2015, Highland and the City[2] each moved for a summary judgment, asserting that undisputed evidence demonstrated that the rezoning decision
"was the product of a thoughtful, well-reasoned analysis by the City of Birmingham (the 'City') spanning four (4) months and seven (7) public meetings. It was expressly considered and approved by the Zoning Advisory Committee, the Planning and Zoning Committee, the Mayor, the Planning Commission, the City Council, and the Five Points South Neighborhood Association. Even more fundamentally, it complies with the comprehensive plan passed by the City of Birmingham in 2013."
Highland and the City included a lengthy recitation of the undisputed facts, including that it was undisputed that the city council's decision was not arbitrary and capricious and that the Bucks' "constitutional claims" failed on substantive grounds and as a matter of law because the Bucks' had failed to serve the complaint on the State Attorney General. Highland and the City attached numerous exhibits to their motions.
On August 19, 2015, the Bucks filed a Rule 56(f), Ala. R. Civ. P., motion, generally asserting that, in order to file an affidavit in opposition to the summary-judgment motions, they needed the City's and Highland's "documents," which were, they said, crucial to their case. The Bucks requested that the circuit court deny the summary-judgment motions or grant a continuance. The Bucks attached to their motion a list of 15 items upon which they intended to rely. The list designated five items that were "not available," which included transcripts or videotapes of certain hearings, a map, and a copy of the comprehensive plan. The record contains the Bucks' attorney's affidavit; however, there is no indication that it was filed in the circuit court. Regardless, in the affidavit, the attorney generally testified that he had asked for "other documentary evidence," for "requested documents," and for "affidavits and documents." On August 28, 2015, the circuit court denied the Bucks' Rule 56(f) motion.
Also on August 19, 2015, the Bucks filed a response to the motions for a summary judgment in which they asserted that genuine issues of material fact existed. Specifically, the Bucks claimed that there remained "multiple issues of fact regarding whether [the rezoning decision] complie[d] with the comprehensive plan," whether the rezoning decision was arbitrary and capricious, whether their right to due process had been violated, and whether the city council was biased. The Bucks denied that they were required to serve a copy of their complaint on the attorney general *80 because, they argued, they had not challenged the constitutionality of a "statute, ordinance, or franchise" pursuant to § 6-6-227, Ala.Code 1975, but, instead, had challenged only the actions of those interpreting and enforcing the relevant ordinance.
On August 28, 2015 the circuit court entered the following judgment in its entirety.
"In this action, the [Bucks] challenge a zoning ordinance passed by the City of Birmingham in December 2014. That ordinance rezoned certain property in the Five Points South district of the City from a B-2 classification (for a general business district) to [Q]B-3 (a community business district). The [Bucks] are owners of an adjoining piece of property.
"Currently pending are motions for summary judgment, filed by the remaining defendants herein. The [Bucks] oppose the motions. This order comes after review of all filings in support of, and in opposition to, the motions.
"This court must observe a highly deferential standard in judging a legislative action taken by the City of Birmingham. It is not the role of this court to step into the shoes of the Birmingham City Council and interfere with its zoning power. Accordingly, the question is not whether the rezoning decision of the City Council was wise or prudent. This court must defer so long as the evidence presents a rational and justifiable basis for the rezoning decision.
"With this position of deference, and after reviewing the evidence presented by the parties, this court cannot conclude that the City Council acted in an arbitrary or capricious way.
"The [Bucks] also argue that the City of Birmingham failed to meet its statutory obligation to publish notice of the proposed ordinance. The City did publish the requisite notice in advance of the City Council's vote, however, and the court agrees with the defendants that additional notice was not required under the particular circumstances here.
"Finally, the court concludes that the [Bucks] received actual notice and were given an opportunity to be heard before the ordinance was enacted. The [Bucks] appear to have taken full advantage of this opportunity by voicing their opposition to the proposal on several occasions. The [Bucks], in short, were provided with sufficient due process.
"For these reasons, and for the others raised therein, the defendants' pending summary judgment motions must be granted. This action is accordingly dismissed with prejudice, with costs taxed as paid."
The Bucks filed a timely postjudgment motion, which the circuit court denied on October 6, 2015. The Bucks filed a timely notice of appeal to our supreme court on November 16, 2015. The appeal was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975. The Bucks seek our review of whether the circuit court erred by applying "the principle of a 'highly deferential standard' to the disputed facts," by concluding that §§ 11-52-77 and 11-52-78, Ala.Code 1975, did not require the City to provide the Bucks "new notice and a new hearing," by failing to conclude that the Bucks' right to due process had not been violated, by concluding that the city council was an impartial tribunal, or by denying the Bucks' Rule 56(f) motion.[3]
*81 "This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Ala. v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce 'substantial evidence' as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989) ; Ala.Code 1975, § 12-21-12."
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).
First, we conclude that the circuit court did not err by "observ[ing] a highly deferential standard."
"It is also well-settled that the courts must apply a highly deferential standard in reviewing zoning decisions. See, e.g., American Petroleum [Equip. & Constr., Inc. v. Fancher], 708 So.2d [129,] 133 [ (Ala.1997) ]; City of Mobile v. Karagan, 476 So.2d 60, 63 (Ala.1985) ; Episcopal Found. of Jefferson County v. Williams, 281 Ala. 363, 202 So.2d 726 (1967). '[P]assage of a zoning ordinance is a legislative act, and it is well established that municipal ordinances are presumed to be valid and reasonable, to be within the scope of the powers granted municipalities to adopt such ordinances, and are not to be struck down unless they are clearly arbitrary and unreasonable.' Cudd v. City of Homewood, 284 Ala. 268, 270, 224 So.2d 625, 627 (1969)."
Pollard v. Unus Props., LLC, 902 So.2d 18, 24 (Ala.2004).
Second, the Bucks contend that the circuit court erred by concluding that §§ 11-52-77 and 11-52-78 did not require the City to provide the Bucks "new notice and a new hearing." Together, §§ 11-52-77 and 11-52-78 provide the notice requirements for the adoption of, changes to, and amendments of zoning ordinances. Our supreme court has held that the statutory 15-day notice requirements contained in § 11-52-77 are mandatory. Kennon & Assocs., Inc. v. Gentry, 492 So.2d 312, 315 (Ala.1986) ; see also Builders Dev. Co. v. City of Opelika, 360 So.2d 962, 964 (Ala.1978) ; Alabama Alcoholic Beverage Control Bd. v. City of Birmingham, 253 Ala. 402, 407, 44 So.2d 593, 597 (1950). In the motion for a summary judgment, Highland and the City asserted:
"All required prerequisites for amending the Birmingham Zoning Ordinance were strictly followed by the City Council. See Ala.Code [1975,] §§ 11-52-77, 11-52-78.... The public hearing for ... Highland's Application was scheduled for December 30, 2014. The proposed rezoning ordinance and notice of public hearing were published in the Birmingham News on November 21, 2014, followed by publication of a synopsis of the proposed ordinance on November 28, 2014. True and correct copies of each *82 such publication are collectively attached as Exhibit 'M.' "
In their response to the motions, the Bucks argued not that notice was not published but that the Q conditions were "not presented to the public." The Bucks' response reads, in pertinent part:
"The notices were published on November 21, 2014, and November 28, 2014, respectively and gave notice of a change from B-2 to B-3. However, at the public hearing, the noticed change from B-2 to B-3 was amended so as to reflect that it was subject to two Q conditions, one of which was based upon a MOU between the developer an adjoining property owner, which said MOU was not executed until December 22, 2014, and not presented for consideration to the City until the evening of December 29, 2014. The MOU was never presented to the public. The transcript of the council hearing reflects an amended ordinance based upon the MOU, which had not been noticed in accordance with § 11-52-77 and § 11-52-78[, Ala.Code 1975 ], as required by law."
The circuit court determined that the City had properly published the requisite notice in advance of the city council's vote and that no additional notice of the Q conditions had been required. In City of Mobile v. Cardinal Woods Apartments, Ltd., 727 So.2d 48, 54 (Ala.1999), our supreme court affirmed the trial court's judgment that had determined that a zoning ordinance was invalid because the notice had failed to apprise the public that the requested rezoning would allow not only specialty shops but also a chain restaurant. The Cardinal Woods court concluded that the notices in that case had "tended only to 'mislead.' " 727 So.2d at 54 (citing 1 E. Zieglar, Jr., Rathkopf's the Law of Zoning and Planning § 10.03 (1992)).
In this case, the public was not similarly misled. The published notice indicated that rezoning of the district containing the subject property from B-2 to B-3 would be considered. The Bucks do not dispute that that notice was sufficient. Even though no notice was given of the contents of the MOU[4] or that the Q conditions would be required, the published notice apprised interested persons "how, and for what, to prepare." Id. The Bucks make no argument that the intended use of the subject property differed significantly because of the addition of the Q conditions. Thus, we conclude that the circuit court did not err by declining to conclude that the City had violated §§ 11-52-77 and 11-52-78.
Third, the Bucks contend that the circuit court erred by failing to conclude that the Bucks' right to due process had been violated. "[P]rocedural due process, protected by the Constitutions of the United States and this State, requires notice and an opportunity to be heard when one's life, liberty, or property interests are about to be affected by governmental action." Brown's Ferry Waste Disposal Ctr., Inc. v. Trent, 611 So.2d 226, 228 (Ala.1992) ; see also Carter v. City of Haleyville, 669 So.2d 812 (Ala.1995). The Bucks argue that they were not allowed a "full and complete" opportunity to be heard.[5] The circuit court determined that *83 the Bucks not only had been offered an opportunity to be heard, but also had "taken full advantage of this opportunity by voicing their opposition to the proposal on several occasions." The documents submitted for the circuit court's review demonstrated that the Bucks' attorney appeared and spoke on their behalf at public hearings and at the city-council meeting at which the rezoning decision was made, and, in fact, the Bucks' attorney was granted additional time at the city-council meeting when he had not completed his statement within the allotted period. Accordingly, the Bucks have failed to demonstrate that they were not afforded notice or the right to be heard.
Fourth, the Bucks argue that the circuit court erred by failing to conclude that the city council was not an impartial tribunal. We agree that " '[a]n unbiased and impartial decision-maker is one of the most, if not the most, fundamental of requirements of fairness and due process.' " State Tenure Comm'n v. Page, 777 So.2d 126, 131 (Ala.Civ.App.2000) (quoting Stallworth v. City of Evergreen, 680 So.2d 229, 233-34 (Ala.1996) ). Based on one comment made by one city-council member, the Bucks contend that the entire city council was "committed, bridled by previous decisions and economic motives[,] to approve the rezoning request" before the public hearings. The Bucks include that comment: "It looks like it's something already set for conclusion to this process."
In context, that comment was made during a public hearing after the Bucks' attorney had been allowed to speak at two committee meetings, had been afforded equal time to speak at the public hearing, and had actually been given additional time to speak at the city-council meeting. The city-council member had requested that the Bucks' attorney be allowed more additional time to speak, which, by a vote, was not allowed. After the vote, the city-council member said that he had wanted to hear more information because he had been unable to attend the committee meetings, that "[i]t looks like it's something already set for conclusion to this process," and that he would have preferred to have "hear[d] the rest of what [the Bucks' attorney] had to say."
In Page, supra, we considered the effect of an " 'intolerably high risk of bias,' " 777 So.2d at 131, and we affirmed the trial court's conclusion that certain notations in official documents and comments of school officials had indicated that a local board of education had predetermined that it would cancel Page's employment contract before Page had had the opportunity to be heard. However, we agree with the circuit court in this case; unlike in Page, the Bucks' reliance on one comment, taken out of context, does not demonstrate an intolerably high risk of bias; thus, the circuit court did not err by impliedly concluding that the city council was not biased against the Bucks before they had an opportunity to be heard.
Finally, we consider whether the circuit court erred by denying the Bucks' Rule 56(f) motion. In Fogarty v. Southworth, 953 So.2d 1225 (Ala.2006), our supreme court explained:
" Rule 56(f), Ala. R. Civ. P., states, in pertinent part: 'Should it appear from the affidavits of a party opposing the *84 [summary-judgment] motion that the party cannot, for reasons stated, present by affidavit facts essential to justify the party's opposition, the court may deny the motion for summary judgment or may order a continuance to permit ... discovery to be had....' As we noted in Scrushy v. Tucker, 955 So.2d 988, 1007 (Ala.2006), ' "[s]uch an affidavit should state with specificity why the opposing evidence is not presently available and should state, as specifically as possible, what future actions are contemplated to discover and present the opposing evidence." ' (Citing Committee Comments to August 1, 1992, Amendment to Rule 56(c) and Rule 56(f).) As the rule indicates, whether to deny a motion for summary judgment or to grant a continuance to allow discovery to proceed is discretionary with the trial court.
"However, the scope of the trial court's discretion is narrow, not broad. This Court has consistently held that the pendency of outstanding discovery alone is not sufficient to bar a summary judgment. See Reeves v. Porter, 521 So.2d 963, 965 (Ala.1988) ; Hope v. Brannan, 557 So.2d 1208, 1212 (Ala.1989). Furthermore, if the party opposing the motion can show that the outstanding discovery is crucial to that party's ability to oppose a summary-judgment motion, then the trial court should not enter the summary judgment until the outstanding discovery is completed. McCullar v. Universal Underwriters Life Ins. Co., 687 So.2d 156, 161 (Ala.1996) (noting that a nonmovant at summary-judgment stage has the 'burden of proving how information from [documents sought in discovery] is crucial to her case'). Therefore, parties opposing a summary judgment bear a more stringent burden than merely showing that the outstanding discovery 'may be' crucial to their case."
953 So.2d at 1229. In this case, we conclude that the circuit court did not abuse its discretion. Neither the Bucks' Rule 56(f) motion nor the Bucks' attorney's affidavit stated with specificity what the opposing evidence was, why the opposing evidence was not available, what future actions were contemplated to discover and present the opposing evidence, or how the opposing evidence was crucial to their ability to oppose the summary-judgment motion.
In conclusion, the circuit court did not err by employing the highly deferential standard of review, by concluding that the City was not required to provide the Bucks new notice and a new hearing as a result of the inclusion of the Q conditions, by concluding that the Bucks' right to due process had not been violated, by implicitly concluding that the city council was an impartial tribunal, or by denying the Bucks' Rule 56(f) motion. The summary judgment entered by the circuit court is therefore affirmed.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

The Bucks' complaint listed fictitiously named defendants; however, no defendants were ever substituted for the fictitiously named defendants. "[T]he existence of those unserved and unnamed defendants did not preclude the finality of the trial court's summary judgment." Webb v. Knology, Inc., 164 So.3d 613, 616 n. 1 (Ala.Civ.App.2014) (citing Rule 4(f), Ala. R. Civ. P.).

In its motion for a summary judgment, the City joined Highland's motion for a summary judgment and included an elaboration of certain facts regarding the public interest in the rezoning decision.

Highland argues in its brief to this court that the Bucks' appeal should be dismissed because of the failure to serve the attorney general. We decline to dismiss the appeal because we conclude that neither the issues raised in the Bucks' complaint nor the issues raised on appeal involve a constitutional challenge to any "statute, ordinance, or franchise." § 6-6-227.

The MOU, in large part, pertains to protections and liability during the construction period.

The assertion that the Bucks were denied due process because they were not afforded a "full and complete" opportunity to be heard is not well taken.
" 'The hallmarks of procedural due process are notice and "the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " ' Alabama Republican Party v. McGinley, 893 So.2d 337, 344 (Ala.2004) (quoting Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), quoting in turn Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965) )."
A.E.C. v. J.R.M., Jr., 46 So.3d 481, 492 (Ala.Civ.App.2009).