SHAW, Justice.
Frank S. Buck and Martha Jane Buck, the plaintiffs in an action below challenging the validity of a rezoning ordinance, petitioned this Court for certiorari review of the decision of the Court of Civil Appeals affirming the trial court's judgment in favor of the defendants, CH Highland, LLC ("Highland"), and the City of Birmingham ("the City") (hereinafter referred to collectively as "the respondents"). Buck v. CH Highland, LLC, 256 So.3d 75 (Ala. Civ. App. 2016). We reverse and remand.
Facts and Procedural History
The Bucks own real property located in the City. Frank operates a law office in a former residential house located on the property. Highland, a real-estate-development company, intends to build a multistory apartment complex ("the project") on property located adjacent to the Bucks' property ("the subject property"). As planned, the project did not conform with the then existing zoning restrictions for the area in which the subject property was located. Thus, on September 8, 2014, Highland submitted a rezoning application to the Zoning Advisory Committee of the Birmingham Planning Commission. Highland requested that the subject property be rezoned from a "B-2 general business district" to a "B-3 community business district" so that it could construct the project.
Subsequently, the Zoning Advisory Committee recommended that the City Council approve a "QB-3 qualified community business district" with certain "Q conditions."[1] The recommended Q conditions included the submission and approval of a site-development plan covering numerous issues, including structure locations and heights, fencing, landscaping, and shielding a parking garage from view.
Highland also submitted a request to the Planning and Zoning Committee of the Birmingham City Council to rezone the subject property from a B-2 district to a B-3 district. It appears that this committee met several times, and Highland's application, as well as the recommendation of the Zoning Advisory Committee on Highland's application, was discussed. It appears that on December 17, 2014, the application was approved "contingent on [a] signed restrictions agreement between the applicant and adjacent property owner." The Bucks contend that the "adjacent property owner" referred to was Temple Beth-El, a Jewish synagogue. Further, *87 like the Zoning Advisory Committee, the Planning and Zoning Committee approved a QB-3 district with the same Q conditions.
Before the application was approved, a "zoning notice" indicating the existence of a proposed rezoning ordinance and notice of a public hearing was published in the Birmingham News on November 21, 2014. The notice stated that the subject property would be rezoned from a B-2 district to a B-3 district. On November 28, 2014, a "synopsis of zoning ordinance" was published, indicating that the City Council would consider the adoption of an ordinance to change the zoning of the subject property from B-2 to B-3. The notices did not mention rezoning the subject property to a QB-3 district or the existence of any Q conditions.
At some point, Highland and Temple Beth-El drafted and signed a "memorandum of understanding" ("the MOU"). The MOU discussed agreements between Highland and Temple Beth-El regarding, among other things, the mitigation of construction noise and the use of an alley, parking lots, and Temple Beth-El property during the construction of the project. Additionally, the MOU included an agreement that any rezoning ordinance regarding the subject property would include Q conditions that would prohibit a list of property uses that would ordinarily be permitted in a B-3 district. Temple Beth-El's representative signed the MOU on December 22, 2014. It appears from the record that the MOU was not delivered to at least some members of the City Council until the night before the December 30 hearing on the rezoning ordinance.
On December 30, 2014, the City Council held a public hearing to consider the proposed rezoning ordinance. The transcript of the hearing indicates that the proposed ordinance was "amended" to include the Q condition suggested by the Zoning Advisory Committee and the Planning and Zoning Committee, as well as a Q condition incorporating the property-use restrictions found in the MOU. The City Council voted to adopt the amended proposed ordinance as Ordinance 1949-G, which rezoned the area in which the subject property was located from a B-2 district to a QB-3 district. Ordinance 1949-G listed two "Q conditions": the requirement to submit a site-development plan, as mentioned in the recommendations of the Zoning Advisory Committee and the Planning and Zoning Committee, and the list of prohibited property uses found in the MOU.
Subsequently, the Bucks sued the City, the mayor, the City Council, Highland, and several fictitiously named defendants, alleging, among other things, that "[t]he actions by the City and its Council, through its Council persons and Mayor, and fictitious parties are violative of applicable statutory, regulatory and the common laws of the state of Alabama." The Bucks sought, among other things, declaratory and injunctive relief. The mayor and the City Council members were subsequently dismissed as defendants, and the Bucks' case proceeded with the City and Highland as defendants.
Highland filed a motion for a summary judgment, which the City joined. Citing Ala. Code 1975, § 11-52-77 and § 11-52-78, which govern publishing notice of proposed zoning ordinances, they argued:
"All required prerequisites for amending the Birmingham Zoning Ordinance were strictly followed by the City Council. ... The proposed rezoning ordinance and notice of public hearing were published in the Birmingham News on November 21, 2014, followed by publication of a synopsis of the proposed ordinance on November 28, 2014."
*88 In response to the motion for a summary judgment, the Bucks disputed whether proper notice had been published:
"The notices were published on November 21, 2014, and November 28, 2014, respectively and gave notice of a change from B-2 to B-3. However, at the public hearing, the noticed change from B-2 to B-3 was amended so as to reflect that it was subject to two Q conditions, one of which was based upon a MOU between the developer [and] an adjoining property owner, which said MOU was not executed until December 22, 2014, and not presented for consideration to the City until the evening of December 29, 2014. The MOU was never presented to the public. The transcript of the council hearing reflects an amended ordinance based upon the MOU, which had not been noticed in accordance with § 11-52-77 and § 11-52-78...."
Ultimately, the trial court entered a summary judgment for the respondents. As to the Bucks' argument that the City failed to properly publish notice of the proposed ordinance, the trial court held:
"The [Bucks] ... argue that the City of Birmingham failed to meet its statutory obligation to publish notice of the proposed ordinance. The City did publish the requisite notice in advance of the City Council's vote, however, and the court agrees with the defendants that additional notice was not required under the particular circumstances here."
The Bucks appealed to this Court, and the appeal was transferred to the Court of Civil Appeals. See Ala. Code 1975, § 12-2-7(6). On appeal in that court, the Bucks challenged the trial court's judgment on several grounds, including whether proper notice of Ordinance 1949-G was published as required by § 11-52-77. The Bucks specifically argued, among other things, that the ordinance as adopted was different from the ordinance as proposed in that it "was subject to two Q conditions" and that notice of the adopted ordinance was not given under §§ 11-52-77 and -78. The Bucks further argued that the "amended" ordinance was required to be published in its "final form." On this issue, the Court of Civil Appeals affirmed the trial court's judgment:
"[T]he Bucks contend that the circuit court erred by concluding that §§ 11-52-77 and 11-52-78 did not require the City to provide the Bucks 'new notice and a new hearing.' Together, §§ 11-52-77 and 11-52-78 provide the notice requirements for the adoption of, changes to, and amendments of zoning ordinances. Our supreme court has held that the statutory 15-day notice requirements contained in § 11-52-77 are mandatory. Kennon & Assocs., Inc. v. Gentry, 492 So.2d 312, 315 (Ala. 1986) ; see also Builders Dev. Co. v. City of Opelika, 360 So.2d 962, 964 (Ala. 1978) ; Alabama Alcoholic Beverage Control Bd. v. City of Birmingham, 253 Ala. 402, 407, 44 So.2d 593, 597 (1950)....
"....
"The circuit court determined that the City had properly published the requisite notice in advance of the city council's vote and that no additional notice of the Q conditions had been required. In City of Mobile v. Cardinal Woods Apartments, Ltd., 727 So.2d 48, 54 (Ala. 1999), our supreme court affirmed the trial court's judgment that had determined that a zoning ordinance was invalid because the notice had failed to apprise the public that the requested rezoning would allow not only specialty shops but also a chain restaurant. The Cardinal Woods court concluded that the notices in that case had 'tended only to "mislead." ' 727 So.2d at 54 (citing 1 E. Zieglar, Jr., *89 Rathkopf's the Law of Zoning and Planning § 10.03 (1992)).
"In this case, the public was not similarly misled. The published notice indicated that rezoning of the district containing the subject property from B-2 to B-3 would be considered. The Bucks do not dispute that that notice was sufficient. Even though no notice was given of the contents of the MOU or that the Q conditions would be required, the published notice apprised interested persons 'how, and for what, to prepare.' Id. The Bucks make no argument that the intended use of the subject property differed significantly because of the addition of the Q conditions. Thus, we conclude that the circuit court did not err by declining to conclude that the City had violated §§ 11-52-77 and 11-52-78."
Buck, 256 So.3d at 82 (footnote omitted).
The Bucks sought certiorari review in this Court, raising numerous challenges to the Court of Civil Appeals' decision. This Court granted certiorari review on a single issue: Whether notice of Ordinance 1949-G was properly published pursuant to § 11-52-77 and § 11-52-78.
Standard of Review
"On certiorari review, this Court accords no presumption of correctness to the legal conclusions of the intermediate appellate court." Ex parte Toyota Motor Corp., 684 So.2d 132, 135 (Ala. 1996). "The law is well established that a de novo standard applies to appellate review of a trial court's summary judgment." Ex parte Patel, 988 So.2d 957, 959 (Ala. 2007).
Discussion
A. Mootness
The respondents have filed a supplemental brief in this Court asserting that, while this case was pending in this Court, Ordinance 1949-G has been repealed and replaced with a new ordinance, Ordinance 1981-G ("the new ordinance"). The new ordinance is virtually identical to Ordinance 1949-G, rezones the subject property from B-2 to QB-3 with the same Q conditions as were in Ordinance 1949-G, and states that it repeals and replaces the prior ordinance. Further, the respondents include a copy of published notices for the new ordinance that indicate the subject property was to be rezoned from B-2 to QB-3 and that set forth the text of the new ordinance, including the Q conditions. According to the respondents, any procedural irregularities in the publication of Ordinance 1949-G are no longer relevant and the new ordinance allows Highland to proceed with the project. Although the parties argue to the contrary, this circumstance raises the issue whether this appeal is now moot.
"This Court has often said that, as a general rule, it will not decide questions after a decision has become useless or moot." Arrington v. State ex rel. Parsons, 422 So.2d 759, 760 (Ala. 1982).
" ' "A moot case or question is a case or question in or on which there is no real controversy; a case which seeks to determine an abstract question which does not rest on existing facts or rights, or involve conflicting rights so far as plaintiff is concerned." ' Case v. Alabama State Bar, 939 So.2d 881, 884 (Ala. 2006) (quoting American Fed'n ofState, County & Mun. Employees v. Dawkins, 268 Ala. 13, 18, 104 So.2d 827, 830-31 (1958) ). 'The test for mootness is commonly stated as whether the court's action on the merits would affect the rights of the parties.' Crawford v. State, 153 S.W.3d 497, 501 (Tex. App. 2004) (citing VE Corp. v. Ernst & Young, 860 S.W.2d 83, 84 (Tex. 1993) ). 'A case becomes moot if at any stage there ceases *90 to be an actual controversy between the parties.' Id. (emphasis added) (citing National Collegiate Athletic Ass'n v. Jones, 1 S.W.3d 83, 86 (Tex. 1999) ).
"... 'A moot case lacks justiciability.' Crawford, 153 S.W.3d at 501. Thus, '[a]n action that originally was based upon a justiciable controversy cannot be maintained on appeal if the questions raised in it have become moot by subsequent acts or events.' Case, 939 So.2d at 884 (citing Employees of Montgomery County Sheriff's Dep't v. Marshall, 893 So.2d 326, 330 (Ala. 2004) )."
Chapman v. Gooden, 974 So.2d 972, 983-84 (Ala. 2007).
If Ordinance 1949-G, the subject of this appeal, has in fact been repealed and replaced by the new ordinance, then this appeal is moot, because there no longer exists a justiciable controversy as to the single issue upon which certiorari review was granted. However, the Bucks argue that the new ordinance was also improperly enacted and is also void; thus, they say, it did not repeal Ordinance 1949-G and their challenge to Ordinance 1949-G remains. In fact, they contend that they have filed a new action in the Jefferson Circuit Court challenging the validity of the new ordinance, and they submitted a copy of the complaint they have filed in that new action.[2]
This Court is not in a position, in the present appeal, to determine whether the new ordinance is valid or invalid and whether it did or did not properly repeal and replace Ordinance 1949-G. That issue is pending in another circuit court action, where a proper record and arguments relating to that issue can be developed. Because there remains the possibility that the new ordinance could be held invalid, a holding that this appeal is moot based on the adoption of the new ordinance is premature. Specifically, if we were to dismiss this case as moot, but the Bucks were to prevail in their new action challenging the new ordinance, the issue of the validity of Ordinance 1949-G would remain unresolved, and the Bucks would have lost their ability to maintain their challenge to it in the instant appeal. In other words, at this time it is uncertain whether the new ordinance is valid and moots this case, and we are not in a position to resolve that uncertainty. Given that uncertainty, we are unable to say that our decision in this appeal would not affect the rights of the parties and that the case has therefore been rendered moot.
B. The validity of Ordinance 1949-G
The issue in this appeal, as noted above, is whether the City, in adopting Ordinance 1949-G, complied with the notice and publication requirements of § 11-52-77 and § 11-52-78. Section 11-52-77 states, in particular part:
"No ordinance shall be passed by any municipal corporation under the authority of this article unless and until the municipal governing body has complied with the procedures set forth in either subdivision (1) or subdivision (2) of this section.
"(1) Prior to adoption, the proposed ordinance shall be published in full for one insertion and an additional insertion of a synopsis of the proposed ordinance, one week after the first insertion, which synopsis shall refer to the date and name of the newspaper in which the proposed ordinance was first published; both such insertions *91 shall be at least 15 days in advance of its passage and in a newspaper of general circulation published within the municipality, or, if there is no such newspaper, then by posting the proposed ordinance in four conspicuous places within the municipality, together with a notice stating the time and place that the ordinance is to be considered by the municipal legislative authorities and stating further that at such time and place all persons who desire shall have an opportunity of being heard in opposition to or in favor of such ordinance."
(Emphasis added.) Section 11-52-78 requires:
"Such regulations, restrictions, and boundaries and ordinances passed under the authority of this article may from time to time be amended, supplemented, changed, modified, or repealed.
"The provisions of Section 11-52-77 relative to public hearings and official notices shall apply equally to all changes and amendments."
In the often cited decision of Kennon & Associates, Inc. v. Gentry, 492 So.2d 312 (Ala. 1986), the Court discussed the proper application of §§ 11-52-77 and -78. In Kennon, a municipal ordinance was proposed to amend the municipality's comprehensive zoning ordinance to rezone a property lot. After the proposed rezoning ordinance was adopted, several neighboring property owners challenged it on various grounds, including whether the proper notice requirements were met. 492 So.2d at 314. Specifically, in addition to the statutory notice requirements of § 11-52-77 and § 11-52-78, the municipality's comprehensive zoning ordinance mandated that adjacent property owners be notified by registered mail of pending rezoning actions. 492 So.2d at 315. The trial court invalidated the rezoning ordinance, and the property owner that sought the rezoning ordinance appealed.
This Court noted that it was undisputed that some of the adjacent landowners did not receive the required notice of the rezoning action by registered mail. This Court then generally discussed legal requirements for properly passing a zoning ordinance:
"This Court has held that the statutory 15-day notice requirements contained in § 11-52-74[3] and § 11-52-77 are mandatory and 'must both be complied with when a city publishes notice of a proposed zoning ordinance or amendment.' Builders Development Co. v. City of Opelika, 360 So.2d [962,] 964 [ (Ala. 1978) ].... This Court has also held that when the legislative body of a city or a planning commission adopts zoning or planning regulations, ordinances, or by-laws, which are 'specifically authorized by the Code, they have the same force and effect as properly enacted statutes.' (Emphasis added.) Lynnwood Property Owners v. Lands Described In Complaint, 359 So.2d 357, 359 (Ala. 1978) ; Boulder Corporation v. Vann, 345 So.2d 272 (Ala. 1977) ; Code of 1975, §§ 11-52-1, et seq."
Kennon, 492 So.2d at 315-16. This Court then discussed treatises on zoning law that restated the proposition that the notice requirements applicable to zoning ordinances must be strictly followed, including requirements that are provided in addition to those imposed by statute. The Court in Kennon then stated:
*92 "In this jurisdiction, we have insisted on strict compliance with procedural requirements contained in statutes and regulations adopted pursuant to the enabling statutes. In Builders Development Co. v. City of Opelika, 360 So.2d at 964-65, this Court held:
" '[ Section] 11-52-74 and § 11-52-77 must both be complied with when a city publishes notice of a proposed zoning ordinance or amendment. Otherwise the ordinance is void. [Citations omitted.]
" '....
" '[Under these statutes], interested parties should have at least fifteen days to prepare for a hearing, not twelve, thirteen, or fourteen.' "
Kennon, 492 So.2d at 317 (alterations in Kennon).
However, the owner of the lot in question, Kennon, argued that "because none of the affected parties was prejudiced by the failure to give the proper notice, strict compliance ought not be required." Kennon, 492 So.2d at 317. This Court disagreed:
"We find Kennon's arguments unpersuasive. In the line of decisions discussed herein, where there had been a failure to strictly follow the procedural requirements applicable to the action sought, especially notice provisions, this Court has invalidated the ordinance passed or the action taken, irrespective of whether any person was prejudiced by the error or omission. Thus, ... there is ample authority for the view that, in adopting or amending a zoning ordinance, mandated procedural steps, especially notice requirements, must be strictly followed."
492 So.2d at 318 (citations omitted). The trial court's judgment invalidating the rezoning ordinance was affirmed.
Although Kennon dealt with the failure to give notice by mail of a proposed rezoning ordinance, in City of Mobile v.Cardinal Woods Apartments, Ltd., 727 So.2d 48 (Ala. 1999), a proposed rezoning ordinance was published as required by § 11-52-77 but was subsequently changed after that publication and before its adoption. That case involved two parcels of land zoned for residential use by the City of Mobile. The proposed rezoning ordinance to change the zones for the parcels to a "B-1 Buffer Business District" and a "B-2 Neighborhood Business District," respectively, contained a list of seven conditions. The published notice stated that the city council "may" consider zoning classifications other than those sought by the rezoning applicant. After the proposed rezoning ordinance was published, the Mobile City Council deleted the seventh provision of the proposed rezoning ordinance, which required compliance with certain "letters of agreement" that limited the proposed use of the parcels-specifically, that the property would be used for retail shops-and added a condition that provided compliance with a different "letters of agreement" that contained no reference to any specific use for the parcels.
After the altered rezoning ordinance was adopted, a neighboring property owner filed suit challenging the rezoning ordinance and alleging that proper notice was not given under §§ 11-52-77 and -78. It was further revealed that the property owner leased both parcels for the construction of a "Roadhouse Grill" restaurant, which, it was alleged, would not have been allowed under the proposed ordinance as published. The trial court invalidated the rezoning ordinance, and the City of Mobile appealed. This Court noted:
" '[T]he purpose of notice statutes is to apprise fairly and sufficiently those persons who may be affected by zoning action so that they may intelligently prepare *93 for the hearing on the matter.' 1 E. Ziegler, Jr., Rathkopf's the Law of Zoning and Planning § 10.03, at 10-15 (1992) (emphasis added). '[N]otice that does not warn of the nature of the proposed amendment is no notice. Otherwise, such a notice, instead of informing, would actually mislead.' Id. § 10.04 (emphasis added). 'One could not advertise a proposed change from residential to commercial and then zone the property industrial, since this would clearly be a misleading notice.' Id. at 10-25.' But where the change of use is clearly specified, details as to non-use restrictions, such as setbacks, or sideyards, cannot be said to be substantial in the sense that people reading the notice would be misled and induced to stay away from the hearing and not present their views.' Id. (Emphasis added.)
" '[I]n adopting or amending a zoning ordinance, mandated procedural steps, especially notice requirements, must be strictly followed.' Kennon & Assocs., Inc. v. Gentry, 492 So.2d 312, 318 (Ala. 1986) (emphasis in original). It is immaterial' whether any person was prejudiced by the error or omission.' Id. (Emphasis in original.)"
Cardinal Woods, 727 So.2d at 54.
On appeal, the City of Mobile argued that the portion of the notice indicating that the city council "may" consider zoning classifications other than that sought by the applicant allowed it to consider zoning and to decide to zone the property for uses other than B-1 and B-2, as provided in the notice. Applying the above authority, the Court stated:
"If this statement means, and the City contends that it does, that the City Council could have considered and decided to zone the [parcels] for industrial use, for example, rather than for the B-1 and B-2 business uses as advertised, then it is patently invalid-it simply does not apprise interested persons as to how, and for what, to prepare. Similarly, use of property for 'small specialty retail shops' differs significantly from use for a Roadhouse Grill restaurant. In other words, it is a difference in use, amounting to more than a mere matter of 'setbacks or sideyards.'
"To be sure, [the owner of the parcels] had the right to seek to rezone the [parcels] for B-2 use, including the Roadhouse Grill restaurant. However, he and his corporation were bound to do so openly and forthrightly. Once they advertised a proposed ordinance and incorporated with the notice the letters of agreement, which set forth specifically the only uses discussed with the neighborhood residents, the City Council was limited to the uses set forth in the letters of agreement. Otherwise, the advertisements were not 'notice' and the resulting ordinance was void.
"That is this case. [The rezoning ordinance] purports to allow the construction of any establishment that could be operated as a B-2 business. However, the September 8 and 15 publications expressly subjected the use of the [parcels] to certain provisos, one of which was 'compliance with the letters of agreement as submitted by the applicant at the [Planning Commission] meeting.' These letters, of course, referred specifically to 'small specialty retail shops.' [The rezoning ordinance] contained no such proviso.
"Additionally, because the September 8 and 15 publications-which purported to authorize [the rezoning ordinance]-referred by incorporation to 'small specialty retail shops,' the publications failed to alert those residents who might have opposed the operation of a restaurant *94 on the [parcels]. Thus, the 'notices' tended only to 'mislead.' "
727 So.2d at 54.
Cardinal Woods holds that the purpose of a notice requirement for a proposed rezoning ordinance is to "fairly and sufficiently" apprise persons who may be impacted by the zoning decision so that they can prepare for the hearing, and it must not "mislead." If a proposed rezoning ordinance is modified after the notice is published, the notice is deficient if the use for the zoned property allowed by the modified ordinance "differ[ed] significantly" from the use allowed in the notice originally published. The opinion suggests that an example of an insignificant change would be the addition of restrictions to the ordinance, such as "non-use restrictions" like "setbacks, or sideyards," which are not "substantial" because people reading the notice would not be "misled and induced to stay away from the hearing and not present their views." In that case, however, the changes to the rezoning ordinance after the notice expanded the use of the parcels; the changes were a difference "amounting to more than a mere matter of 'setbacks or sideyards.' " 727 So.2d at 54.
The respondents contend that, in the instant case, the addition of the Q conditions to Ordinance 1949-G were no different than changes amounting to no more than the "setbacks or sideyards" that Cardinal Woods would have approved. The Bucks, on the other hand, contend that such a rule was rejected in the subsequent decision in Ex parte Bedingfield, 782 So.2d 290 (Ala. 2000). In that case, this Court granted certiorari review of a decision of the Court of Civil Appeals, Bedingfield v. Mooresville Town Council, 782 So.2d 284, 285 (Ala. Civ. App. 1999), that had upheld the trial court's judgment denying a challenge to the validity of a comprehensive zoning ordinance. Notice of the proposed zoning ordinance and a map had been published. In its subsequent consideration of the proposed ordinance, the town council changed the zoning classification of two lots "from residential to business" because, according to the Court of Civil Appeals, the lots had been "erroneously excluded from the business district on the original zoning map." 782 So.2d at 286. After the altered ordinance was adopted, certain plaintiffs, including the owner of the lots, challenged its validity. Specifically, they argued, among other things, that the town had violated §§ 11-52-77 and -78. The trial court held that changes to the proposed comprehensive zoning-ordinance map did not require new notices for changes that were small in relation to a proposed zoning map as a whole.
The Court of Civil Appeals affirmed. This Court granted certiorari review and explained the pertinent issue as whether the Court of Civil Appeals erred in "applying a substantial-compliance analysis to the zoning-ordinance notice requirements of §§ 11-52-77 and 11-52-78" and, therefore, its decision conflicted with Kennon"and its progeny." Ex parte Bedingfield, 782 So.2d at 291. This Court noted the language from Kennon stating that the notice requirement of § 11-52-77 was "mandatory" and must "be complied with" and that, when there has been a failure to "strictly" follow the notice provisions in passing an ordinance, it was invalidated, despite whether any person had been prejudiced. The Court then held:
"The opinion of the Court of Civil Appeals permitting 'substantial compliance' with §§ 11-52-77 and 11-52-78 directly conflicts with Kennon, supra, and its progeny. This Court has required strict compliance with the notice and hearing requirements of § 11-52-77 and that strict compliance requirement extends to § 11-52-78. Kennon, supra, and *95 its progeny. Section 11-52-78 requires the Town Council to comply with the notice and hearing requirements of § 11-52-77 before the Town Council may amend, change, supplement, modify, or repeal the zoning ordinance. Although the error in the proposed zoning ordinance which classified Yarbrough's property as 'residential' rather than 'business' was, without dispute, an honest or clerical error, correcting the error required a change to the proposed ordinance. The Town Council changed the classification of Yarbrough's property from 'residential' to 'business' and then adopted the ordinance without its having been posted in its changed form with notice that it would be considered in that form as required by § 11-52-77. Thus, because the Town Council did not comply with the notice and hearing requirements of § 11-52-77 before it purported to adopt the ordinance with the changed classification of Yarbrough's property from 'residential' to 'business,' the zoning ordinance is invalid for lack of the notice required by § 11-52-77 for the ordinance (in the form purportedly adopted) or for lack of the notice required by § 11-52-78 for the change itself. Kennon, supra. Therefore, the trial court erred in entering summary judgment in favor of the defendants, and the Court of Civil Appeals erred in affirming the judgment of the trial court."
Ex parte Bedingfield, 782 So.2d at 293-94 (some emphasis added).
Although this analysis has several moving parts, it is clear that the Court faulted the town's adoption of the ordinance "without its having been posted in its changed form" and without notice that the ordinance would be "considered" in its new form, which was "required by § 11-52-77." Further, the adoption of the ordinance with a changed classification of certain property was "invalid for lack of the notice required by § 11-52-77 for the ordinance (in the form purportedly adopted)." The Bucks contend that, like the ordinance in Ex parte Bedingfield, the proposed Ordinance 1949-G was changed after the notice was published. The City did not publish the "changed" ordinance, and, thus, under Ex parte Bedingfield, it failed to "strictly comply" with the mandatory notice provisions of § 11-52-77.[4] Under this analysis, we agree that the City's adoption of Ordinance 1949-G did not comply with § 11-52-77.
The respondents argue, on the other hand, that CardinalWoods is authority for the proposition that a city does not need to publish a new notice and hold a new hearing when it adds "details" to a published ordinance but does not add any new potential uses the proposed ordinance originally allowed. Specifically, the respondents contend *96 that, under CardinalWoods, a city gives proper notice when, after publishing the full proposed ordinance and notice of the public hearing, the city later adds details to the ordinance that merely limit some of the uses the published ordinance would have allowed. The respondents contend that the changes to Ordinance 1949-G-the addition of the Q conditions-are in the same nature of changes as adding "non-uses" of the property. They argue that, here, the Q conditions actually deleted potential property uses that would ordinarily be allowed in a B-3 district and do not allow additional or "different" uses. Thus, they say, the Q conditions, under the apparent logic of Cardinal Woods, would not be significant or substantial and would not mislead a person from attending the hearing. We disagree.
The respondents' seek support from Cardinal Woods by implication-the Court in Cardinal Woods quoted a treatise stating that certain alterations might legitimately be made to previously published proposed ordinances. The Court did not actually apply such a rationale in that case-the alterations to the ordinance actually changed the use of the property-but the implication is that, if the changes did not "differ significantly," the Court would have approved. The viability of such an implication cannot be squared with the Court's subsequent decision in Ex parte Bedingfield, which explicitly rejected the notion that "substantial compliance" with § 11-52-77 is permissible.[5] Any implication that can be drawn from Cardinal Woods that alterations are permissible if the altered ordinance did not "differ significantly" from the published ordinance is no different from a rule allowing "substantial compliance" with § 11-52-77.
Additionally, the rule advanced by the respondents-that changes to "non-use," i.e., the addition of restrictions in an already published ordinance, do not require notice-is inconsistent with the idea that the notices should "fairly and sufficiently" apprise the public of the content of a city's proposed zoning action. Although the Cardinal Woods decision tacitly approved changes to details such as "setbacks" and "sideyards," the changes to the published ordinance in the instant case were of a much different magnitude: the Q condition incorporated from the MOU changed the zoning district from one that would allow 37 possible uses of property in the district to one that would allow only 9. What resulted was a radically different B-3 district from that which the public was told the City intended to create. Those changes were never disclosed to the public before the hearing or even to the City Council until literally the night before the hearing. Thus, even if this Court were to accept such a rule from Cardinal Woods, it would not apply in this case.
Moreover, the idea that no notice is needed for changes that add restrictions to zoning districts seems to be premised on the idea that the public would not be interested in such changes, not want or need notice of them, and thus would not want to attend a public hearing discussing such changes. However, this appears to embrace the notion that the public would not be prejudiced if such changes were made without its knowledge because those changes would not negatively impact the public. That premise is directly rejected by our caselaw, above, holding that it is immaterial *97 whether any person is prejudiced by the failure to comply with the notice requirements regarding zoning ordinances. Ex parte Bedington, supra ; Cardinal Woods, supra ; and Kennon, supra. Further, that premise is based on speculation; members of the public may very well be interested when previously undisclosed restrictions are added to zoning ordinances.
Finally, and most importantly, the plain language of § 11-52-77 requires that the ordinance ultimately adopted be the same as the proposed ordinance that was published. The Code section states: "Prior to adoption, the proposed ordinance shall be published in full ...." The ordinance that is adopted is to be the proposed ordinance that was, prior to adoption, "published in full." In this case, the proposed ordinance that was published in full was not the ordinance that was adopted; instead, the proposed ordinance that was published was later amended, and the amended ordinance was adopted. To hold that only a proposed ordinance need be published, but something else, whether an ordinance that is insignificantly different from the proposed ordinance or an ordinance that is radically different, could be adopted, is contrary to the plain language of § 11-52-77.
In the instant case, the proposed rezoning ordinance that was published merely indicated to the public that there would be a zoning change from a B-2 district to a B-3 district. Ordinance 1949-G does not create a B-3 district; instead, it creates a district of a substantially smaller range of uses than what was otherwise disclosed to the public in the notice. Even if this Court were to reject the long-standing rule that, to invalidate an ordinance, it is unnecessary for the public to be prejudiced by the City's failure to publish the ordinance, we cannot presume that no prejudice occurred in this case.
Conclusion
The decision of the Court of Civil Appeals is reversed, and the case is remanded to that court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
Stuart, C.J., and Bolin, Main, Wise, and Bryan, JJ., concur.
Parker and Sellers, JJ., dissent.
Parker, J., concurs.
I respectfully dissent. Because a new zoning ordinance has superseded the ordinance at issue in this appeal, there is no longer a justiciable controversy. The new ordinance rendered this appeal moot. I would quash the writ of certiorari.

According to the respondents, the City's zoning ordinance allows certain restrictions on potential property uses in districts zoned as B-3. These are called "Q conditions."

Neither the materials submitted by the respondents regarding the passage of the new ordinance nor the materials submitted by the Bucks disclosing their suit challenging its validity are contained in the record in this appeal.

Alabama Code 1975, § 11-52-74, which has since been repealed, also provided that zoning ordinances be published before passage. See generally Builders Dev. Co. v. City ofOpelika, 360 So.2d 962 (Ala. 1978), for a discussion of the joint application of §§ 11-52-74, -77, and -78.

The respondents contend that Ex parte Bedingfield should not be followed because, they say, it misapplied § 11-52-78. Specifically, that decision appears to hold that § 11-52-78 requires an amendment to a proposed ordinance be published under § 11-52-77. Section 11-52-78, however, provides that zoning ordinances that have been "passed" may be amended and, when that occurs, the same notice provisions of § 11-52-77 apply to that amendment. It does not speak to whether notice must be given when a proposed ordinance is amended. Further, § 11-52-78 had no application in Ex parte Bedingfield, because the ordinance at issue in that case was a comprehensive zoning ordinance that was being adopted in the first place, and was not an amendment or change to an existing (previously adopted) zoning ordinance. This interpretation of § 11-52-78 has been repeated in subsequent lower-court decisions. Speakman v. City of Cullman, 829 So.2d 176, 180 (Ala. Civ. App. 2002), and Town of Stevenson v. Selby, 839 So.2d 647, 649 (Ala. Civ. App. 2001). However, although this interpretation is one of the arguments advanced by the Bucks, we do not apply it in this case.

The respondents contend that if this Court "discards the Cardinal Woods framework," it should do so only on a prospective basis, because they relied on it in this case. However, Ex parte Bedingfield clearly called into question the respondents' interpretation of Cardinal Woods.