Rel: September 5, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2025

————————————————

### CL-2024-0844

————————————————

**Miranda Pilato**

**v.**

**John Samaniego, Sheriff of Shelby County**

**Appeal from Shelby Circuit Court**
**(CV-22-380)**

<u>On Application for Rehearing</u>

PER CURIAM.

The opinion issued by this court on June 27, 2025, is withdrawn, and the following is substituted therefor.

Miranda Pilato appeals from a judgment entered by the Shelby Circuit Court ("the circuit court") affirming a decision of the Shelby County Law Enforcement Personnel Board ("the LEPB") that affirmed the termination by John Samaniego, the Sheriff of Shelby County, of Pilato's employment as a Shelby County deputy sheriff. We affirm the circuit court's judgment.

## Background

Miranda Pilato began her employment with the Shelby County Sheriff's Office ("the SCSO") on April 23, 2018. On June 2, 2022, Pilato was informed by Sheriff Samaniego that the SCSO had initiated an administrative investigation regarding her job performance and that, pending the results of that investigation, Pilato would be temporarily assigned to desk duty. On June 6, 2022, Pilato was provided written notice that the SCSO had initiated an administrative investigation regarding her job performance and informing Pilato of her rights and responsibilities related to that investigation. On June 8, 2022, several members of the SCSO met with Pilato to discuss her job performance regarding events that had occurred on January 3, 2022, May 3, 2022, and May 28, 2022. At the conclusion of that meeting, Pilato was informed

that she could either resign her employment or that her employment would be terminated. Pilato refused to resign, and, thus, Sheriff Samaniego terminated her employment. Pilato filed a notice of appeal requesting a hearing before the LEPB regarding the termination of her employment.

On July 26, 2022, the LEPB conducted an evidentiary hearing. At that hearing, Pilato denied that her actions in the three events had violated the SCSO Policies and Procedures. Additionally, Pilato argued that she had been denied due process because she had not been provided a pretermination hearing and had not received 10 days' advance notice of the charges against her before her employment was terminated. On July 28, 2022, counsel for the LEPB notified Pilato and Sheriff Samaniego that it had affirmed Sheriff Samaniego's termination of Pilato's employment. On July 30, 2022, Pilato's counsel requested a rehearing of the LEPB's decision.

On August 16, 2022, the LEPB entered an order that, among other things, scheduled a rehearing to occur on September 20, 2022, and instructed counsel for both parties to submit a written brief outlining their respective arguments, positions, and supporting authority. On

3

September 13, 2022, Pilato's counsel filed a brief in support of rehearing in which he argued that the evidence regarding the January 3, 2022, incident had been insufficient; that Pilato's actions on May 3, 2022, and May 28, 2022, had been lawful and had not violated the SCSO Policies and Procedures; that the due-process rights to which Pilato was entitled under Cleveland Board of Education v. Loudermill, 470 U.S. 532, 546 (1985), and Todd v. Kelley, 783 So. 2d 31 (Ala. Civ. App. 2000), were violated when she was not afforded a pretermination hearing; that the termination of Pilato's employment violated her due-process rights under the SCSO Policies and Procedures because she was not provided written notice of the charges against her in advance of the termination of her employment; and that the decision of the LEPB to uphold the termination of Pilato's employment had not been made by an unbiased decision maker.

On September 20, 2022, the LEPB conducted a rehearing. Pilato's counsel and counsel for the SCSO made arguments, but no witnesses were called or examined. Pilato's counsel generally reasserted the arguments that he had made in his brief in support of rehearing. The SCSO's counsel countered that, as an elected official, Sheriff Samaniego

and his deputies, who are alter egos of the sheriff, are exempted from the protections of the Alabama Merit System Act, Ala. Code 1975, § 36-26-1 et seq., which requires a pretermination hearing. Thus, SCSO's counsel asserted that Pilato's reliance on Loudermill and Kelley, neither of which involved the termination of the employment of a county sheriff's deputy, was misplaced. On September 23, 2022, counsel for the LEPB again notified Pilato and Sheriff Samaniego that the LEPB had affirmed the decision of Sheriff Samaniego terminating Pilato's employment.

On September 28, 2022, Pilato filed an appeal in the circuit court, challenging the termination of her employment by Sheriff Samaniego and the decision of the LEPB upholding that termination. On October 7, 2024, the circuit court entered an "Order on Appeal" affirming the LEPB's decision upholding the termination of Pilato's employment. Pilato did not seek postjudgment relief. On October 23, 2024, Pilato filed a notice of appeal to this court.

Issues

On appeal to this court, Pilato first argues that the circuit court's judgment affirming the termination of her employment is due to be reversed because, she says, her rights to due process under the United

5

States Constitution were violated when she was not afforded a pretermination hearing. She also contends that the termination of her employment violated her due-process rights under the SCSO Policies and Procedures because she was not provided written notice of the charges against her in advance of the termination of her employment and that the decision to terminate her employment was not made by an unbiased decision maker. Finally, she argues that the facts do not support the termination of her employment.

Standard of Review

"Judicial review of administrative decisions like those of the LEPB [Law Enforcement Personnel Board] is generally governed by the enabling act that created the particular administrative body or by the regulations governing the particular administrative body. See, generally, Ex parte Smith, 394 So. 2d 45, 48 (Ala. Civ. App. 1981). Typically, the standard of review of administrative decisions requires that the circuit court uphold the administrative decision if it is supported by substantial and legal evidence. Ex parte Personnel Bd. of Jefferson County, 648 So. 2d 593, 594 (Ala. Civ. App. 1994), Board of Water & Sewer Comm'rs [of Mobile v. Smith], 591 So. 2d [521,] 522 [(Ala. Civ. App. 1991)], and Ex parte Smith, 394 So. 2d at 47; see also LEPB Rules and Regulations § 10.07(f). This court has defined 'substantial evidence' in the context of an administrative appeal as 'relevant evidence that a reasonable mind would view as sufficient to support the determination.' Ex parte Personnel Bd. of Jefferson County, 648 So. 2d at 594. When a circuit court's judgment affirming or reversing the decision of an

6

administrative body is appealed to this court, we apply the same standard of review to the administrative decision as was applied by the circuit court. Ex parte Personnel Bd. of Jefferson County, 648 So. 2d at 594; see also City of Mobile v. Personnel Bd. for Mobile County, 57 Ala. App. 516, 518, 329 So. 2d 570, 573 (Civ. 1976) (noting that the circuit court and the appellate court are to apply the substantial-evidence test to the administrative body's decision, not to the decision of the appointing authority)."

Lawson v. Shelby Cnty. Sheriff's Office, 961 So. 2d 158, 161 (Ala. Civ. App. 2007).

## Discussion

Section 10.06 of the LEPB's Rules and Regulations provides as follows:

"An employee with permanent status shall have the right to appeal disciplinary action of dismissal, demotion, or suspension, within the limits prescribed in the Rules. An employee desiring to appeal shall, within ten (10) calendar days after notice thereof, file with [the LEPB], in duplicate, a written answer to the charges and request for a hearing. Such answer shall contain:

"• The reason of dismissal, demotion, or suspension.

"• An admission of denial or guilt.

"• Reasons why the dismissal, demotion, or suspension should not take effect. Upon receipt of the appeal, [the LEPB] shall forward a copy thereof to the appointing authority."

7

(Emphasis added.)

In her brief to this court, Pilato argues, just as she did in the proceedings before the LEPB and in the circuit court, that her rights to due process were violated when she was not provided with a pretermination hearing as required by federal due-process law. In substance, Pilato argues that her employment has been wrongfully terminated in violation of federal laws. Pilato argues that the LEPB should have considered her federal-law arguments when deciding whether the decision of Sheriff Samaniego to terminate her employment should have been affirmed or reversed.

Our supreme court has determined that county personnel boards generally cannot consider federal statutory and federal constitutional issues, which, the supreme court has said, are beyond their competence. In Ex parte Boyette, 728 So. 2d 644 (Ala. 1998), our supreme court held that a discharged employee could not raise in a proceeding before the Jefferson County Personnel Board ("the JCPB") a claim that his employment had been terminated in violation of the federal Age Discrimination in Employment Act ("the ADEA"), 29 U.S.C. § 621 et seq. The supreme court further held that the Jefferson Circuit Court could

8

not consider the ADEA claim on appeal from the decision of the JCPB, even though the enabling act establishing the JCPB authorized the Jefferson Circuit Court "'to review questions of law.'" 728 So. 2d at 645 (quoting Act No. 1945-248, Ala. Acts 1945, § 22, as amended by Act No. 1977-679, Ala. Acts 1977, p. 1176) (emphasis omitted). In Ex parte Averyt, 487 So. 2d 912 (Ala. 1986), our supreme court held that the Mobile County Personnel Board, and the Mobile Circuit Court upon judicial review of the decision of that board, could not consider a federal due-process claim, which, the supreme court said, must be asserted in an independent and collateral suit filed in the circuit court.

Pilato argues that, in Averyt and Boyette, the discharged employees had brought federal claims against their employers seeking damages, which, she says, the personnel boards could not adjudicate but that, in her case, she asserted federal law only as a defense to her termination, i.e., as the "reason[] why the dismissal, demotion, or suspension should not take effect." We do not find this distinction noteworthy. In both Averyt and Boyette, our supreme court considered the dispositive issue to be the lack of jurisdiction of a county personnel board to decide questions of federal law. Regardless of whether federal

9

law is asserted offensively or defensively, the LEPB does not have the statutory authority to decide questions of federal law.

> "The LEPB [Law Enforcement Personnel Board] was created by Act [No.] 79-524, Ala. Acts 1979 ('the Act'), and it is governed by that Act, as amended. A dismissed, demoted, or suspended employee may appeal the disciplinary action to the LEPB. LEPB Rules and Regulations § 10.06. The LEPB is required to hold a hearing within 30 days of the employee's notice of appeal and is to determine 'whether or not the employee, by reason of his act or acts as charged and his record of service, merits retention in the service or should be dismissed or otherwise disciplined....' LEPB Rules and Regulations § 10.07(a). The Act itself permits the LEPB to 'order [a dismissed employee] reinstated with back pay ..., or take or approve such disciplinary action as, in [its] judgment, is warranted by the evidence and under the law.' Act No. 79-524, § 16(b). Likewise, the LEPB's regulations permit the LEPB to 'rescind, modify, or increase the penalty imposed by the appointing authority as warranted by the facts at the hearing.' LEPB Rules and Regulations § 10.07(d). Any party aggrieved by the decision of the LEPB may seek review of the decision in the circuit court. LEPB Rules and Regulations § 10.07(f). The LEPB's regulations further state that the circuit court is to 'review questions of law and the question of whether or not the decision or order of the [LEPB] is supported by the substantial and legal evidence.' LEPB Rules and Regulations § 10.07(f)."

Lawson v. Shelby Cnty. Sheriff's Office, 961 So. 2d at 160.

Like the rules of the JCPB at issue in Boyette, the LEPB Rules and Regulations do not specifically authorize the LEPB to consider federal law when reviewing the employment decisions within its purview.  The

LEPB Rules and Regulations do authorize a circuit court "to review questions of law," but that language does not authorize review of questions of federal statutory law beyond the competence of the LEPB. Like the Mobile County Personnel Board in <u>Averyt</u>, the LEPB could not review the question whether Pilato's employment termination violated her right to due process under federal law, which right could be vindicated only in an independent and collateral suit, not in an appeal from the final decision of the LEPB.

In this case, Pilato did not commence a separate and collateral action to assert her federal constitutional due-process claims; instead, she attempted to raise those issues as a defense to the termination of her employment before the LEPB and in her appeal to the circuit court. In <u>Averyt</u>, our supreme court held that a collateral action is not only the proper method for raising constitutional issues, but also that it is the "<u>only</u> avenue available." 487 So. 2d at 913. We, thus, conclude that the termination of Pilato's employment cannot be reversed based on any alleged error by the LEPB or the circuit court in disregarding federal due-process law.

We next consider Pilato's argument that the decision to terminate her employment was not made by an unbiased decision maker. Pilato primarily frames her argument in terms of the requirement espoused in Stallworth v. City of Evergreen, 680 So. 2d 229 (Ala. 1996), that a pretermination hearing be conducted by an unbiased decision maker. Pilato's reliance on Stallworth is, however, misplaced.

In Stallworth, a former employee of the City of Evergreen commenced an action seeking a judgment declaring the termination of his employment from the city to be invalid. 680 So. 2d at 230. The trial court entered a judgment for the defendants. The employee appealed to our supreme court. In reversing the trial court's judgment, our supreme court determined that the employee's job as a personnel officer was under the "merit system" and, thus,

> "[i]n the context of the routine dismissal of a governmental employee who has a legitimate right to continued employment absent sufficient cause for termination, the United States Supreme Court has held that 'all the process that is due [to such an employee] is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures.' Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547-48, 105 S.Ct. 1487, 1496, 84 L.Ed.2d 494 (1985)."

680 So. 2d at 233.

Generally, the Merit System Act provides that certain classified state employees have a protectable property interest in their employment and that those classified state employees may be terminated only for cause following a pretermination hearing. Ala. Code 1975, § 36-26-27(b). However, as an elected official, a sheriff and, by extension, a sheriff's deputies are exempted from the due-process protections provided by the Merit System Act. Blount Cnty. Comm'n v. Sherrell, 77 So. 3d 1196 (Ala. Civ. App. 2010); see Ala. Code 1975, § 36-26-10(a) & (b)(1) (providing that officers elected by a vote of the people are exempt from the Merit System Act). Thus, because Pilato is exempted from the Merit System Act and therefore not entitled to a pretermination hearing, we find no merit in Pilato's argument that she was entitled to a pretermination hearing conducted by an unbiased decision maker.

Pilato also challenges the termination of her employment on the basis that she was not provided the process to which she was entitled under the SCSO Policies and Procedures because, she says, she was not provided advance written notice of the charges against her. The SCSO Policies and Procedures provide, in pertinent part, that employees are entitled to due process, which, in the context of an administrative

13

investigation, means that "the employee will be provided a written notice of the investigation, reason for the investigation, and his/her rights during the investigation"; however, that notice may be delayed by the sheriff, at his or her discretion, based on the "depth of the investigation, risk to others, coordination with other law enforcement agencies, or the nature of the alleged violations." SCSO Policies and Procedures: Administrative Investigations.

The record reveals that, on June 2, 2022, Pilato was informed in writing that Sheriff Samaniego had initiated an administrative investigation regarding her job performance and that, pending the results of that investigation, she would be temporarily assigned to desk duty. On June 6, 2022, Pilato was provided written notice that the SCSO had initiated an administrative investigation regarding her job performance and informing Pilato of her rights and responsibilities related to that investigation. On June 8, 2022, Major Clay Hammac, Captain Kevin Turner, Lieutenant Kevin Brand, and Lieutenant Joey McGee met with Pilato and discussed her job performance regarding events that had occurred on January 3, 2022, May 3, 2022, and May 28, 2022. Because the record indicates that Pilato was informed in writing

that an administrative investigation had been initiated, the circuit court could have reasonably concluded that Pilato had not been denied the due process provided by the SCSO Policies and Procedures. In light of our limited scope of review, we cannot substitute our judgment for that of the circuit court. See Lawson, supra.

To the extent that Pilato challenges the termination of her employment on the basis that she was not advised of the disciplinary action taken against her as required by the SCSO Policies and Procedures, we disagree. To support her argument, Pilato cites the SCSO Policies and Procedures: Discipline and Accountability, which establishes the information the SCSO is obligated to provide to employees when disciplinary action is taken. Her reliance on that provision is, however, misplaced.

Because Pilato's employment was terminated, the SCSO Policies and Procedures: Discipline and Accountability policy regarding notice of termination is implicated. The SCSO Policies and Procedures regarding "notice of termination" provide that,

> "[i]f an employee's performance requires investigation, the employee may be placed on administrative leave pending outcome of the investigation. The employee may then be

15

terminated. The terminated member will be provided with information that includes:

"1. Reasons for the termination;

"2. Effective date of the termination;

"3. Whom to contact regarding status of fringe and retirement benefits;

"4. Statement that the content of the personnel file, relating to the termination, will be made available to the member according to state public law, upon request.

"5. Statement regarding the employee's right to file an appeal, if any."

SCSO Policies and Procedures: Discipline and Accountability.

On June 8, 2022, several members of the SCSO met with Pilato to discuss her job performance. At that meeting, Pilato was informed that her employment with the SCSO was being terminated, the reasons for the termination, and the effective date of the termination. Additionally, Pilato was informed of whom she needed to contact regarding her employment benefits, was informed that the contents of her personnel file would be made available upon request, according to state law, and was informed of her right to appeal her termination. Based on that evidence, the circuit court could have reasonably concluded that Pilato

16

had not been denied the due process to which she was entitled under the SCSO Policies and Procedures. In light of our limited scope of review, we cannot substitute our judgment for that of the circuit court. See Lawson, supra.

Lastly, Pilato argues that the facts do not support the termination of her employment. At the hearing conducted by the LEPB, several witnesses testified regarding Pilato's actions on January 3, 2022, May 3, 2022, and May 28, 2022.

Regarding the January 3, 2022, event, the record reveals that the SCSO had concerns that Pilato had been the last unit to arrive on scene at a call regarding a domestic disturbance involving weapons and that she had failed to "run code"[1] en route to that disturbance. Pilato admitted that she had failed to "run code" en route to the domestic disturbance. She, however, opined that because there had been multiple units on scene, she had properly exercised her discretion in determining that public-safety concerns weighed against "running code" while en route to that domestic disturbance. According to Pilato, because "running code"

---

[1]In the minutes from the LEPB's hearing, Lieutenant Brand explained that to "run code" means to act with a sense of urgency and to activate emergency lights and sirens on a law-enforcement vehicle.

was not mandatory, she had properly exercised the discretion she had been afforded under the SCSO Policies and Procedures in deciding not to "run code" on that occasion.

Regarding the May 3, 2022, event, the record establishes that the SCSO had concerns that Pilato had been on the scene of a call and that, based on the statements Pilato had made in her incident report, she had witnessed an act of domestic violence but had failed to arrest the alleged perpetrator. Specifically, in the narrative portion of her incident report, Pilato indicated that she had observed a male push a female that had been attempting to respond to Pilato's questioning. Dash-camera footage of the incident revealed that Pilato had instructed the alleged perpetrator not to touch the female again. According to Lieutenant Brand and Sergeant Smith, those facts constituted domestic violence and, therefore, Pilato was required to arrest the perpetrator at that time.

Pilato denied that she had observed any criminal activity at the May 3, 2022, incident but admitted that her report contained errors. Pilato, however, excused the errors in her incident report as a poor choice of words. Pilato also testified that she had attempted to amend her

18

incident report shortly following the incident but that she had been unable to do so.

Regarding the May 28, 2022, event, the record establishes that the SCSO had concerns that Pilato had failed to assist in the pursuit of a vehicle. According to Lieutenant Brand, a call for service to assist with the pursuit of a vehicle had been issued by dispatch but Pilato had failed to "attach" to the call by informing dispatch that she had been responding to the call and had failed to assist the responding officers. According to Lieutenant Brand, the SCSO Policies and Procedures provide that "deputies choose" when to "run code" but that the "spirit of [the policy] doesn't mean you can let someone else handle it, it means traffic conditions or weather conditions, doesn't mean you can let someone else handle it." Lieutenant Brand also said that other officers that had assisted in that pursuit had also complained about Pilato's failure to attach to the call and to render assistance.

Pilato denied that she had not joined the vehicle pursuit on May 28, 2022. According to her, after dispatch had notified her of the pursuit, she had attempted to identify a location to deploy "spikes" to intercept the fleeing vehicle. Pilato said that, before she was able to identify a location

to deploy the spikes, dispatch had notified her that the driver of the vehicle being pursued had wrecked his vehicle and had been taken into custody along with a passenger in the vehicle. Pilato opined that it would have been reckless for her to have run code since the suspects had been apprehended. Pilato, however, admitted that she had failed to notify dispatch that she had attached to the call and was rendering assistance.

The termination-of-employment letter that the SCSO provided to Pilato indicated that her actions had violated certain provisions of the LEPB Rules and Regulations as well as certain provisions of the SCSO Policies and Procedures regarding rules of conduct. Regarding the LEPB Rules and Regulations, Pilato's actions implicated Section 10.01, which provides that employment is conditioned on the "satisfactory conduct of the employee and continued, efficient performance of assigned duties and responsibilities." According to the termination-of-employment letter, the SCSO had identified three separate causes for discipline under Section 10.02 of the LEPB Rules and Regulations that were sufficient for dismissal, demotion, or suspension, i.e., incompetence or inefficiency, neglect of duty, and "for any other reason deemed to be in the best

20

interest of the public service and not inconsistent with the intent of the Act or the rules and regulations arising therein."

Regarding Pilato's violations of the SCSO Policies and Procedures regarding rules of conduct, the termination-of-employment letter indicated that Pilato's actions had implicated both Section One, which generally pertains to obedience to orders, rules, and laws, and Section Two, which generally pertains to an employee's attention to duty. Specifically, regarding the Section One violations, the termination-of-employment letter informed Pilato that all employees are governed by the established rules of conduct and that a violation of those rules of conduct is considered sufficient cause for disciplinary action, including termination of employment, see 1.1 Obedience to Orders, Rules and Laws, SCSO Policies and Procedures: Rules of Conduct; that employees are required to abide by the personnel policy and the general, special, and tactical orders, rules of conduct, and other properly issued internal directives of the SCSO, see 1.3 Adherence to Departmental Rules for Employees, SCSO Policies and Procedures: Rules of Conduct; and that Pilato's failure to act in accordance with her duties and her willful neglect of her duties was unbecoming conduct that had adversely affected the

21

efficiency of, had eroded public respect for, or had reduced confidence in the government's service and was prohibited. <u>See</u> 1.11 Conduct Unbecoming, SCSO Policies and Procedures: Rules of Conduct.

Regarding the Section Two violations, the termination-of-employment letter informed Pilato that employees are required to be attentive to their duties and are required to perform all duties assigned to them even if such duties are not specifically assigned to them in any departmental rules or procedures manual, <u>see</u> 2.1 Performance of Duty, SCSO Policies and Procedures: Attention to Duty; that employees must consider it their duty to be of service to the general public and to render service in a kind, considerate, and patient manner, <u>see</u> 2.5 Responsibility to Serve the Public, SCSO Policies and Procedures: Attention to Duty; and that employees are required to promptly report all crimes, emergencies, incidents, dangers, hazardous situations, and relevant information that comes to their attention, and that employees are prohibited from concealing, ignoring, or distorting the facts of such crimes, emergencies, incidents, and information, <u>see</u> 2.11 Duty to Report All Crimes and Incidents, SCSO Policies and Procedures: Attention to Duty. The termination-of-employment letter concluded:

"Due to your failure to act upon the crime of Domestic Violence, when witnessed in your presence on May 3, 2022 (see case # 202202906), and due to your failure to actively engage in the renderance of assistance to your fellow deputies and appropriately render assistance to the public on January 3, 2022[,] in response to an active [d]omestic [v]iolence call, and your failure to render assistance to the public and to your fellow deputies during an active pursuit and follow-up investigation on May 28, 2022[,] to wit, your violation of said policies above, your employment with the [SCSO] is hereby terminated on this date."

The termination of Pilato's employment was predicated on the SCSO's determination that Pilato had violated the SCSO Policies and Procedures and the LEPB Rules and Regulations. By terminating Pilato's employment, Sheriff Samaniego implicitly determined that Pilato had not been operating within any discretion provided by the LEPB Rules and Regulations and the SCSO Policies and Procedures when she failed to arrest the perpetrator of domestic violence or to render support to fellow officers on the other two occasions at issue. That implicit determination was affirmed by the LEPB when it upheld the decision of Sheriff Samaniego to terminate Pilato's employment. In its "Order on Appeal," the circuit court concluded, among other things, that the evidence sufficiently supported the LEPB's decision that the termination of Pilato's employment was due to be upheld based on her

23

having engaged in conduct that violated the LEPB Rules and Regulations and the SCSO Policies and Procedures.

We have previously stated:

"Neither this court nor the trial court may substitute its judgment for that of the administrative agency. Alabama Renal Stone Inst., Inc. v. Alabama Statewide Health Coordinating Council, 628 So. 2d 821, 823 (Ala. Civ. App. 1993). 'This holds true even in cases where the testimony is generalized, the evidence is meager, and reasonable minds might differ as to the correct result.' Health Care Auth. of Huntsville v. State Health Planning Agency, 549 So. 2d 973, 975 (Ala. Civ. App. 1989). Further, 'an agency's interpretation of its own rule or regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation.' Sylacauga Health Care Ctr., Inc. v. Alabama State Health Planning Agency, 662 So. 2d 265, 268 (Ala. Civ. App. 1994)."

Colonial Mgmt. Grp., L.P. v. State Health Plan. & Dev. Agency, 853 So. 2d 972, 975 (Ala. Civ. App. 2002). Thus, we affirm the circuit court's judgment to the extent that it determined that the evidence sufficiently supports the LEPB's decision to uphold Sheriff Samaniego's termination of Pilato's employment.

## Conclusion

Because Pilato has failed to raise an argument on appeal that merits reversal of the circuit court's judgment, that judgment is affirmed.

APPLICATION GRANTED; OPINION OF JUNE 27, 2025, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.

All the judges concur.